### In re PIEPER CHILDREN.

[Cite as *In re Pieper Children* (1993), 85 Ohio App.3d 318.]

Court of Appeals of Ohio,
Preble County.

No. CA91–12–023.

Decided March 8, 1993.

*Rebecca J. Ferguson,* Preble County Prosecuting Attorney, for appellee, Preble County Children's Services Board.

*George J. Earley,* Guardian *ad litem.*

*Gary L. Sheets,* for appellant, Erin Pieper.

GRADY, Judge.

This matter is before us on an appeal by the mother of Laura, Jessica, and Samantha Pieper from judgment entries of the Court of Common Pleas of Preble County, Juvenile Division, finding these three children to be "dependent children" as defined in R.C. 2151.04 and awarding temporary custody of them to the Preble County Children's Services Board ("PCCSB").

Erin Pieper is the mother of these three girls, and at all times during these proceedings was married to their father, Roy Pieper. In a prior appeal, the trial court's decision to divest Roy Pieper of all parental rights concerning Laura, Jessica, and Samantha Pieper was affirmed due to the existence of sufficient,

credible evidence to support the trial court's finding that Roy Pieper had physically abused Samantha, sexually abused Jessica and Samantha, and neglected all three girls. See *In re Pieper* (1991), 74 Ohio App.3d 714, 600 N.E.2d 317, jurisdictional motion overruled (1993), 66 Ohio St.3d 1410, 607 N.E.2d 9. However, the decision of the trial court to divest Erin Pieper of all parental rights was reversed, as there was insufficient evidence to establish the trial court's finding of neglect by Erin Pieper. *Id.*

After this partial reversal PCCSB filed a second complaint on July 16, 1991, which was amended on September 3, 1991. That complaint forms the basis of this action.

As amended, the complaint alleges that Laura, age eight, Jessica, age six, and Samantha, age five, were neglected, abused, and dependent children as of April 12, 1989, continuing through July 19, 1991, and thereafter. The facts and grounds alleged include charges that, in spite of a judicial determination that Roy Pieper had sexually abused two of the children, Erin Pieper denied that any abuse had occurred and told several persons that she and Roy had a plan "to get the children [and] move to Indiana."

After the filing of the second complaint, the court held a shelter care hearing on July 17, 1991, and determined that the children would remain in the temporary custody of PCCSB in their foster care placements. The children had been in foster care placements since shortly after the first complaint was filed in April, 1989.

In accordance with R.C. 2151.35, bifurcated judicial proceedings were held concerning the second complaint. R.C. 2151.35 provides for an adjudicatory hearing to determine whether the children were abused, neglected, and dependent, as alleged in this complaint. This is to be followed by a dispositional hearing, if necessary. It is during the dispositional phase that the court evaluates the dispositional alternatives and chooses the option which would serve the best interests of the children. *In re Cunningham* (1979), 59 Ohio St.2d 100, 107, 13 O.O.3d 78, 82, 391 N.E.2d 1034, 1039.

Following an adjudicatory hearing, by judgment entry filed December 9, 1991, the trial court found all three girls to be dependent. A hearing on the matter of disposition was then held, and by judgment entry filed December 30, 1991, the court ordered that the Pieper children remain in the temporary custody of PCCSB. In its dispositional entry, the court also ordered Erin Pieper to have no contact or communication with Roy Pieper, to attend counseling classes in Preble County, to provide PCCSB with a waiver of confidentiality with respect to any medical treatment, and to submit to drug testing.

Erin Pieper has filed a timely appeal from the orders of the Preble County Court of Common Pleas, Juvenile Division, which found Laura, Jessica, and Samantha Pieper to be dependent children and granted their temporary custody to PCCSB. In support of this appeal, she asserts eight assignments of error. The first four assignments allege errors in adjudication while the final four allege errors in the dispositional orders of the case.

Appellant's first assignment of error states:

"The juvenile court erred to the prejudice of appellant in either not applying or incorrectly applying principles of res judicata and law of the case following reversal of the first adjudication and disposition."

■ Under the doctrine of *res judicata*, a matter adjudged is taken for truth and a judgment rendered without fraud or collusion by a court of competent jurisdiction is conclusive of the rights, questions, and facts in issue, as to the parties or their privies in any subsequent action. 63 Ohio Jurisprudence 3d (1985) 178–179, Judgments, Section 400.

■ In the first proceeding the evidence was insufficient as a matter of law to support a finding that Erin Pieper had neglected her children. The court stated: "Simply put, the state has failed to prove that Erin's conduct, separate and apart from Roy's, caused her children to be neglected." *In re Pieper, supra,* 74 Ohio App.3d at 724–725, 600 N.E.2d at 323. However, the evidence was sufficient as a matter of law to find that Roy's conduct and behavior toward his children were physically abusive and, therefore, constituted "neglect" as defined by the statute. On that basis Roy was divested of custody of the children.

The matters constituting Erin's alleged neglect, which had to do with her care of the children and the household prior to the first determination on August 21, 1990, may not be used to find neglect in a subsequent proceeding. However, Roy's adjudicated abuse and neglect may be considered in a subsequent proceeding, as may Erin's subsequent conduct to the extent that it subjects the children to the possibility of further abuse by Roy.

R.C. 2151.04 defines a "dependent child" to include any child:

"(C) Whose condition or environment is such as to warrant the state, in the interests of the child, in assuming his guardianship;

"(D) To whom both of the following apply:

"(1) He is residing in a household in which a parent * * * has abused or neglected a sibling of the child;

"(2) Because of the circumstances surrounding the abuse or neglect of the sibling and the other conditions in the household of the child, the child is in danger of being abused or neglected by that parent * * *."

In the second adjudicatory hearing the trial court determined that the children would be exposed to further abuse from Roy Pieper if returned to Erin Pieper, as Erin Pieper had not permanently separated from her husband, in spite of her representations to the contrary. The court found this was a sham separation designed to mislead the court into awarding custody of the children to Erin Pieper, who would then flee the area and reunite the children with their abusive father.

This finding of a sham separation is supported by evidence of events occurring after the adjudicatory hearing of August 21, 1990. The evidence supporting this finding included a lease signed by Roy Pieper and Erin Pieper on June 3, 1991, for a home in Richmond, Indiana, which contradicted Erin Pieper's claim that she and Roy Pieper had separated on that same date. Additionally, an investigator testified that in November 1991, he found mail addressed to Roy Pieper, which was postmarked in October 1991, in the dumpster located near Erin Pieper's Richmond residence and used by Erin Pieper to deposit trash. There was also testimony by witnesses who had seen Roy Pieper at Erin Pieper's Richmond residence on several occasions. Erin Pieper's hospital admission forms from June, July, and August 1991, indicated that Roy Pieper resided with her at the Richmond address.

Three witnesses who had been friends of the Piepers testified that Roy and Erin Pieper planned to stage a separation in an effort to persuade the court to award custody to Erin. Jim Hartbarger, Rocky Elkins, and Marsha Elkins testified that Erin had stated that she and Roy planned to flee with the children in the event she was granted custody. The testimony of Marsha Elkins specifically indicated that Erin Pieper had informed her of this plan after the first adjudication. This evidence was sufficient to permit the trial court to find that Roy and Erin Pieper had not permanently separated, but had staged a sham separation in order to bolster Erin Pieper's chances of regaining custody of their children, whereupon they would flee.

The foregoing events occurred after the first proceeding. It demonstrates, and permits the court to conclude, that if custody of her children is restored to Erin Pieper it will subject them to the risk of abuse by Roy, whose abuse has been judicially determined. Those matters demonstrate grounds sufficient to show the conditions for dependency contemplated in R.C. 2151.04(C) or (D).

Appellant's first assignment of error is overruled.

Appellant's second assignment of error states:

"The juvenile court erred to appellant's prejudice by relying upon events and circumstances which transpired after September 25, 1990, when it permanently

terminated all [of] appellant's parental rights in the original action, and since then because the children have never been in appellant's care, custody, and control."

■ Erin Pieper asserts that any incidents that occurred after the first adjudication of dependency cannot be the basis for a second adjudication of dependency, as the children were not then in her custody and therefore could not have been adversely impacted by her conduct, relying on *In re Burrell* (1979), 58 Ohio St.2d 37, 12 O.O.3d 43, 388 N.E.2d 738.

We find appellant's argument unpersuasive. Ohio courts have held that newborn infants can be dependent before they have ever been released into their parents' custody. See *In re Bishop* (1987), 36 Ohio App.3d 123, 521 N.E.2d 838; *In re Smart* (1984), 21 Ohio App.3d 31, 21 OBR 33, 486 N.E.2d 147; *In re Campbell* (1983), 13 Ohio App.3d 34, 13 OBR 36, 468 N.E.2d 93; *In re East* (C.P.1972), 32 Ohio Misc. 65, 288 N.E.2d 343. The state need not subject a child to a potentially detrimental environment where a court has made a prospective finding of dependency pursuant to R.C. 2151.04. "A juvenile court should not be forced to experiment with the health and safety of a newborn baby where the state can show, by clear and convincing evidence, that placing the child in such an environment would be threatening to the health and safety of that child." *In re Campbell, supra,* 13 Ohio App.3d at 36, 13 OBR at 39, 468 N.E.2d at 96. In such a situation, state intervention is warranted. *Id.*

State intervention was also warranted in this case. As in *Campbell,* a prospective finding of dependency is appropriate where children have not been in the custody of the mother, but circumstances demonstrate that to allow the mother to have custody of her children would threaten their health and safety. The evidence allowed the court to make a finding, pursuant to R.C. 2151.04, that these children are dependent because they will be subject to abuse unless the requested relief is granted. Therefore, the court did not err by relying on events which occurred after the children were not in Erin Pieper's custody.

Appellant's second assignment of error is overruled.

Appellant's third assignment of error states:

"The juvenile court erred to appellant's prejudice by failing to address whether PCCS[B] made a good faith effort to return appellant's children to her after the court of appeals' decision and instead used PCCS[B]'s failure to carry out this duty to the children as grounds for awarding PCCS[B] temporary custody."

■ R.C. 2151.419 requires the court to find that the agency filing the complaint for custody "has made reasonable efforts * * * to eliminate the continued removal of the child from his home, or to make it possible for the child to return home." The statute also requires the court to make written findings of

fact describing the relevant services rendered by the agency and why they were inadequate to reunite the family.

In its adjudicatory entry, the trial court made no express findings contemplated by the statute. However, the ultimate issue is the reasonableness of the agency's efforts, and that may be determined from the record.

The record demonstrates that the risk of harm to these children from Roy Pieper was inherent in the mother's continued custody and was not susceptible to any curative efforts by PCCSB. In that event, neither reunification to revive the actuality of the risk nor empty efforts to avoid it are required. These matters are manifest in the findings of the court and there is no doubt as to their sufficiency.

Appellant's third assignment of error is overruled.

Appellant's fourth assignment of error states:

"The adjudication of the juvenile court is not support by clear and convincing evidence and/or is against the manifest weight of the evidence."

R.C. 2151.35 requires that the fact of dependency be proven by clear and convincing evidence. *In re Green* (1984), 18 Ohio App.3d 43, 18 OBR 155, 480 N.E.2d 492, paragraph two of the syllabus; *In re Bibb* (1980), 70 Ohio App.2d 117, 120, 24 O.O.3d 159, 161, 435 N.E.2d 96, 98–99. "Clear and convincing evidence" is that which " 'produce[s] in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.' " *In re Adoption of Holcomb* (1985), 18 Ohio St.3d 361, 368, 18 OBR 419, 425, 481 N.E.2d 613, 620, quoting *Cross v. Ledford* (1954), 161 Ohio St. 469, 53 O.O. 361, 120 N.E.2d 118.

The complaint, as amended, alleges that these children were dependent under R.C. 2151.04(C) or 2151.04(D). The court's adjudicatory entry indicates that it found both provisions to be applicable to this situation, as the court quoted the operative language of each prior to finding these children to be "dependent children" as defined in R.C. 2151.04.

At the adjudicatory hearing, Erin Pieper testified that she had separated from Roy Pieper on June 3, 1991. However, the trial court determined that Erin Pieper's statements in this regard were not credible. In its findings, the trial court supported this assessment by observing that Erin Pieper said whatever appeared to be in her interests at the moment of utterance, with little or no regard for the truth. The court also observed that her statements were contradicted by those of other witnesses and by documentary evidence. We defer to the trial court regarding this finding as the trial court is in the best position to observe witnesses and assess their credibility. *Seasons Coal Co. v.*

*Cleveland* (1984), 10 Ohio St.3d 77, 80, 10 OBR 408, 410–411, 461 N.E.2d 1273, 1276–1277.

As we discussed under the first assignment of error, the finding that Erin Pieper had not severed her relationship with Roy Pieper was also supported by the testimony of three witnesses, to whom she had revealed her plan to stage a separation from Roy Pieper in order to mislead the court into returning custody of the children to her. The finding that this was a staged separation was also supported by testimony that indicated that after the date of the claimed separation, Roy Pieper was seen at Erin Pieper's Richmond residence several times, that Roy Pieper's current mail was found in a nearby trash container, and that Roy Pieper's address was the same as Erin Pieper's on her hospital admission forms.

These facts, taken together, constitute clear and convincing evidence from which the trial court could conclude Erin Pieper would expose her children to a potentially abusive environment such that her children were dependent under R.C. 2151.04(C) or 2151.04(D). A finding of dependency pursuant to R.C. 2151.04(C) is justified as the potentially abusive environment to which these children would otherwise be subject warrants the state, in the interests of these children, in assuming their guardianship. Alternatively, R.C. 2151.04(D) also provides a basis for a finding of dependency as the abusive and neglectful parent, Roy Pieper, would be residing in the home with the children he had previously abused and neglected, thereby placing these children in danger of being abused and neglected again.

Having reviewed the record, we find that the trial court had clear and convincing evidence before it upon which to base its adjudication that Laura, Jessica, and Samantha Pieper were dependent children.

■ Erin Pieper also asserts that the adjudication of dependency was against the manifest weight of the evidence. The standard of review is whether sufficient, credible evidence exists to support the trial court's adjudication:

"Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578, syllabus.

The review of the evidence before the trial court reveals that the adjudication of dependency by the trial court was supported by competent, credible evidence. Based on that evidence, the trial court could properly find by clear and convincing evidence that the Pieper children were dependent. Therefore, the adjudication of dependency was not against the manifest weight of the evidence.

Appellant's fourth assignment of error is overruled.

Appellant's fifth assignment of error states:

"The trial court erred to appellant's prejudice and abused its discretion in its disposition judgment by ordering appellant to attend counseling classes in Preble County, Ohio, when the undisputed evidence showed she was a bona fide resident of Indiana and employed, making it difficult if not impossible for her to work and comply with the court's order."

A review of the record indicates that Erin Pieper has failed to preserve this issue for appeal. During the dispositional hearing, the court discussed amendments to the reunification plan and indicated that prior to visitation, Erin Pieper would be required to complete a parenting class and receive counseling concerning the effects of abuse on children. Erin Pieper's attorney responded by stating that his client had no objection to those requirements. The judgment then stated that the counseling should be at the Preble County Counseling Center "because they have the most experience with these children." Erin Pieper's attorney agreed with the court's proposal, even to the extent of suggesting the sessions be conducted by a particular counselor at the Preble County Counseling Center who had previously counseled Erin Pieper.

It is apparent that Erin Pieper had the opportunity during the dispositional hearing to object to the trial court's order to attend counseling classes in Preble County, Ohio, but failed to do so. "[A]n appellate court will not consider any error which * * * [the complaining party] could have called but did not call to the trial court's attention at a time when such error could have been avoided or corrected by the trial court." *State v. Glaros* (1960), 170 Ohio St. 471, 11 O.O.2d 215, 166 N.E.2d 379, paragraph one of the syllabus. Such errors are waived and may not be raised upon appeal. *Stores Realty Co. v. Cleveland* (1975), 41 Ohio St.2d 41, 43, 70 O.O.2d 123, 124, 322 N.E.2d 629, 630–631.

Further, we see no plain error in the court's requirements. Though Erin Pieper now makes her home in Indiana, crossing the state line to a nearby community for counseling has not been shown to constitute a hardship or a matter beyond the authority of an Ohio court to require.

Appellant's fifth assignment of error is overruled.

Appellant's sixth assignment of error states:

"The juvenile court abused its discretion in ordering appellant not have contact with Roy Pieper and if she does have contact with him to report the same to the court as such an order constitutes an involuntary surrender of appellant and Roy Pieper's marital privilege under R.C. 2317.02(C); violates appellant's right to freedom of association as guaranteed by the First Amendment to the United States Constitution; and is tantamount to a judicial order that appellant divorce her husband."

██ The relevant paragraph of the trial court's dispositional order provides:

"Erin Pieper is ordered to have no contact or communication with Roy Pieper, and at anytime she is visiting the children or has the children in her temporary custody, as for a visit, she shall ensure that there is no contact or communication between Roy Pieper and any of the three children. In the event Erin Pieper has any contact or communication of any kind with Roy Pieper, she is ordered to immediately report the same to PCCSB."

In any proceeding wherein a child has been adjudged dependent, R.C. 2151.359 permits the trial court to make an order restraining or controlling the conduct of a parent in the relationship of such individual to the child if the court finds that such an order is necessary to control any conduct or relationship that will be detrimental or harmful to the child. R.C. 2151.359 further provides that such orders are within the restraining authority of the court if the conduct or relationships would otherwise tend to defeat the execution of the order of disposition.

Because Roy Pieper's parental rights have been permanently divested due to a determination that he sexually abused and neglected these children, the harm to the children that could result from contract with Roy Pieper is apparent. An order to Erin Pieper that she not allow any contact or communication between Roy Pieper and the children is therefore necessary to prevent harm to her children.

██ To the extent that the court's orders limit contacts between Erin and Roy Pieper, they are in derogation of the fundamental right of marriage and must be narrowly tailored to serve their purpose. See *Zablocki v. Redhail* (1978), 434 U.S. 374, 98 S.Ct. 673, 54 L.Ed.2d 618. A dispositional order prohibiting contact between Erin Pieper and Roy Pieper and requiring her to report any contacts which do occur is not necessary to serve the best interests of the children as their interests can be accommodated by a more narrowly tailored provision that protects them from contact with Roy Piper but does not infringe upon Erin Pieper's marital rights.

The court's order regarding Erin Pieper's contact with Roy Pieper is overly broad and it imposes an undue restriction upon the exercise of marital rights. The above-referenced paragraph of the court's entry field December 30, 1991, should be modified to read:

"Erin Pieper is ordered that, while the children are in her physical presence or custody, she is to have no contact or communication with Roy Pieper, and it is further ordered that while the children are in her physical presence or custody, Erin Pieper is not to permit any contact or communication between Roy Pieper and the children."

Appellant's sixth assignment of error is sustained.

Appellant's seventh assignment of error states:

"The trial court erred to appellant's prejudice by ordering that she waive confidentiality respecting any medical treatment she receives or hospitalization she undergoes."

Erin Pieper argues that the juvenile court exceeded its authority by ordering her to provide PCCSB with a waiver of confidentiality relative to any medical treatment she receives. She contends that such an order violates her right to privacy and compels her to surrender her physician-patient privilege.

However, as indicated in the previous assignment of error, broad authority is vested in the juvenile court pursuant to R.C. 2151.359 to make orders controlling or restraining the parents of children adjudged dependent. Such an order is invalid only if it constitutes an abuse of discretion. "[A] court exercising Juvenile Court jurisdiction is invested with a very broad discretion, and, unless that power is abused, a reviewing court is not warranted in disturbing its judgment." *In re Anteau* (1941), 67 Ohio App. 117, 119, 21 O.O. 129, 130, 36 N.E.2d 47, 48. "The term 'abuse of discretion' connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable * * *." *In re Jane Doe 1* (1990), 57 Ohio St.3d 135, 137, 566 N.E.2d 1181, 1184, citing *State v. Adams* (1980), 62 Ohio St.2d 151, 157, 16 O.O.3d 169, 172–173, 404 N.E.2d 144, 148–149.

There was evidence that Erin Pieper habitually used marijuana and is a manic depressive who periodically fails to take the medication which marginally controls the symptoms of her bipolar disorder. The dispositional order of the juvenile court granted temporary custody to PCCSB with an order that weekly visits between Erin Pieper and her children begin after appellant successfully completes the counseling mandated by the court.

Because the primary focus of the dispositional phase is the best interests of the children, see *Cunningham, supra,* the dispositional order that Erin Pieper provide PCCSB with a confidentiality waiver concerning any medical treatments is appropriate to ensure that the visitation take place only while Erin Pieper is following her prescribed course of medication, which must be strictly controlled in order to be an effective treatment. The court also acted within its discretion to order this waiver to ensure that Erin Pieper is not using illicit drugs. Under these circumstances, it was not an abuse of discretion for the trial court to make such an order.

Erin Pieper suggests that the court's order is overbroad as PCCSB has no right to know about all the medical treatments she receives. She may apply for a protective order if there is any information which PCCSB need not know, if it

does not affect the interests of the children. As a matter of course, all of Erin Pieper's medical information should be kept confidential by PCCSB.

Accordingly, appellant's seventh assignment of error is overruled.

Appellant's eighth assignment of error states:

"The juvenile court erred to appellant's prejudice in ordering that she submit to standardless blood and urine tests for drug screening and lithium level testing at PCCS[B] discretion without guidelines and without limitations as to frequency or purpose."

After the Pieper children were adjudicated dependent, the court in its dispositional order affirmed and approved the provisions of the case plan filed by PCCSB on August 15, 1991, which required Erin Pieper to "submit to routine *monthly* urinalysis drug screening" (emphasis *sic* ) "for drugs as well as Lithium Carbonate levels" to ensure that Erin does not use or abuse drugs and alcohol, including, but not limited to, marijuana. Within additional provisions to be included in the amended case plan, Erin Pieper was ordered not to use marijuana or any illegal drugs, to cooperate in providing urine or blood samples to PCCSB for drug testing, to maintain her lithium medication, and to provide copies of her lab reports of her own lithium testing or to cooperate with PCCSB in drawing blood samples for lithium testing.

A reading of the provisions of the case plan and the amendments ordered by the court indicates that the blood or urine screening was to be performed on a monthly basis in order to monitor appellant's lithium level and to check for the presence of illicit drugs. Therefore, we find no merit to appellant's argument that these tests were standardless, discretionary, and without limitations as to frequency or purpose. Accordingly, appellant's eighth assignment of error is overruled.

The judgment of the Preble County Court of Common Pleas, Juvenile Division, will be affirmed in part and reversed in part, and this cause is remanded to that court for modification of its order concerning contact between Erin Pieper and Roy Pieper as discussed in connection with the sixth assignment of error.

*Judgment accordingly.*

WOLFF and FAIN, JJ., concur.

THOMAS J. GRADY, WILLIAM H. WOLFF, JR., and MIKE FAIN, JJ., of the Second Appellate District, sitting by assignment.