OPINION
Appellant-father Gerald Bess appeals the Judgment Entry of the Stark County Court of Common Pleas, Family Court Division, granting appellee Stark County Department of Human Services permanent custody of appellant's minor children.
 STATEMENT OF THE FACTS AND CASE
On July 31, 1995, the Stark County Department of Human Services filed a complaint alleging Shequeal Kell (aka Bess) (DOB 2-27-93) and Brittanie Bess (DOB 7-11-95) to be dependent and/or neglected and/or abused children and requesting temporary custody be awarded to DHS pending the hearing on permanent custody. On August 1, 1995, the trial court conducted an emergency shelter care hearing, at which time the trial court found probable cause to remove the children from the mother's custody and granted temporary custody to DHS.
On August 11, 1995, appellant filed an objection to the emergency shelter care order alleging the order should be set aside because he was not noticed. The adjudicatory hearing scheduled for August 25, 1995, was continued until October 11, 1995, due to the parents' request for a trial and the lack of service on appellant. The hearing on the prayer for permanent custody was scheduled for October 24, 1995, and a dispositional hearing was scheduled for October 26, 1995.
On September 26, 1995, the trial court conducted a hearing on appellant's objection to the emergency shelter care order. The trial court overruled the objection pending the taking of further evidence regarding the father and the emergency shelter care. The following day, the additional emergency shelter care hearing in regards to appellant occurred. At that hearing, the trial court determined appellant was incarcerated at the time the children were removed from their mother's custody. The trial court entered a finding of probable cause and ordered the children remain in the temporary custody of DHS.
At the adjudicatory hearing on October 12, 1995, DHS amended its prayer for permanent custody to a prayer for temporary custody. An agreement on an amended complaint was reached, and the First Amended Complaint was filed on October 26, 1995. Based upon the facts in the amended complaint, the parents stipulated that Shequeal and Brittanie were dependent children. The trial court ordered weekly supervised visits with the children conditioned upon the parents' providing DHS with a confirmation call the day before the visit. The parents' failure to call would result in the visit's being canceled.
On October 25, 1995, DHS filed a case plan.[1] The case plan required appellant: 1) to have an alcohol and drug assessment at Quest Recovery Services, and; thereafter, follow all recommendations for treatment as well as provide two urine specimens each week; 2) to attend and actively participate in the Choices for Men Program; 3) to attend Goodwill Parenting Program; 4) to establish appropriate independent housing; and 5) to establish paternity of Shequeal and Brittanie. In addition, appellant was required to sign releases for Quest and Choices.[2]
At the dispositional hearing on October 26, 1995, the trial court ordered that DHS be awarded temporary custody of the children. The trial court adopted the case plan as filed. At the semiannual review on January 18, 1996, the trial court noted that appellant was not maintaining visitation with the children. Accordingly, temporary custody was continued with DHS.
Thereafter, on May 14, 1996, DHS filed a motion for permanent custody of the children. The motion asserted that the parents failed to comply with the case plan, failed to address their drug problems, and failed to consistently visit the children. At the annual review on July 12, 1996, the trial court noted appellant had not consistently visited his children; failed to comply with the case plan; and failed to meet the objectives contained in the case plan.
The hearing on the motion for permanent was conducted on January 16, 1997. During his cross-examination, appellant stated he was currently residing with a friend. He admitted that he had not yet established paternity of the children. Regarding visitation with the children, appellant explained he tried to visit them every two weeks, but was not always able to do so. Appellant also testified he attended sixteen out of twenty-one classes at Goodwill Parenting.
Kelli Williams, the DHS family service worker, testified mother and appellant had difficulties in their own relationship. Mother repeatedly told Williams that appellant was abusive towards her and she was afraid of him. Mother also told Williams appellant provided her with drugs and appellant was the reason she could not get help for her drug problem. Williams further testified mother admitted that she and appellant used crack cocaine on a regular basis.
Regarding appellant's compliance with his case plan, Williams testified, although appellant had contacted Quest on two occasions for a drug and alcohol assessment, appellant had failed to appear for both appointments. During the pendency of the case, appellant did not provide the requisite urine samples. Furthermore, appellant did not attend anger management classes at Choices for Men or complete the Goodwill Parenting Program. Williams noted appellant had not established paternity and had not obtained appropriate independent housing.
Regarding appellant's visitation with the children, Williams testified appellant did not take advantage of the ample opportunities provided to him. During the course of a year and a half, appellant only visited the children on a dozen occasions. When appellant did visit, he provided food and acted appropriately with the children. However, appellant was prone to arguments with mother or the case worker.
Linda Temsic, a parenting instructor from Goodwill, testified appellant had been terminated from the parenting program due to excessive unexcused absences. Although appellant had informed Goodwill he was too ill to attend the classes, and had brought in a doctor's note to that effect, Goodwill learned that appellant had worked on the days he was absent from class due to his alleged illness. Temsic noted that appellant attended sixteen out of twenty-one sessions prior to his termination, and had participated while in the class.
Colleen Miller, a social worker from Goodwill, testified, in April, 1994, appellant had also attended Goodwill Parenting, but had also been terminated from that class.
Sheila Johnson, the records custodian for the Choices for Men Program, testified the agency had no records regarding appellant.
On direct-examination, appellant denied ever using any type of drug, such as cocaine or marijuana. However, when confronted, appellant admitted he was de-toxing at the Brecksville Veterans Hospital from August 20 to August 28, 1996. Appellant stated, although he tried to enroll in the Choices Program, he had been unable to do so. Appellant claimed he missed the visits with the children only because he forgot to confirm the visits with DHS as required. Since their births, appellant has never had custody of either child nor have the children spent a night with him. Via Judgment Entry dated July 10, 1997, the trial court terminated appellant's parental rights and awarded permanent custody of the children to DHS. Findings of Fact and Conclusions of Law relative to the July 10, 1997 Judgment Entry were filed on the same day.
It is from the July 10, 1997 Judgment Entry appellant prosecutes this appeal raising the following assignments of error:
 I. THE TRIAL COURT ABUSED ITS DISCRETION, ERRED AS A MATTER OF LAW, AND VIOLATED APPELLANT'S CONSTITUTIONAL AND STATUTORY RIGHTS WHEN IT FAILED TO GRANT APPELLANT'S MOTION IN LIMINE AND ADMITTED INTO EVIDENCE MATERIAL THAT HAD BEEN OBTAINED IN VIOLATION OF FEDERAL AND STATE LAW.
 II. THE TRIAL COURT ABUSED ITS DISCRETION, ERRED AS A MATTER OF LAW, AND VIOLATED APPELLANT'S CONSTITUTIONAL AND STATUTORY RIGHTS WHEN IT TERMINATED APPELLANT'S PARENTAL RIGHTS AND GRANTED PERMANENT CUSTODY OF APPELLANT'S MINOR CHILDREN TO THE STARK COUNTY DEPARTMENT OF HUMAN SERVICES WHEN THE JUDGMENT WAS NOT SUPPORTED BY CLEAR AND CONVINCING EVIDENCE AND WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 III. THE TRIAL COURT ABUSED ITS DISCRETION, ERRED AS A MATTER OF LAW, AND VIOLATED APPELLANT'S CONSTITUTIONAL AND STATUTORY RIGHTS WHEN IT TERMINATED APPELLANT'S PARENTAL RIGHTS AND GRANTED PERMANENT CUSTODY OF APPELLANT'S MINOR CHILDREN TO THE STARK COUNTY DEPARTMENT OF HUMAN SERVICES WHEN IT WAS NOT SHOWN BY CLEAR AND CONVINCING EVIDENCE THAT THE STARK COUNTY DEPARTMENT OF HUMAN SERVICES MADE A DILIGENT EFFORT TO REUNITE APPELLANT AND THE MINOR CHILDREN.
 I
In his first assignment of error, appellant maintains the trial court abused its discretion, erred as a matter of law, and violated his constitutional and statutory rights by failing to grant his motion in limine and allowing privileged material into evidence. Specifically, appellant submits his records from the Brecksville Veterans Hospital are confidential and the information contained therein may be disclosed only for the purposes and under the circumstances set forth in 38 U.S.C. § 7332. Additionally, appellant asserts his records from Quest Recovery Services are confidential and may be disclosed only under such circumstances and for such purposes as set forth in 42 U.S.C. Section 290dd-2 and R.C. 3793.13.
Regarding appellant's argument the Brecksville Veterans Hospital records were improperly admitted into evidence, we find the issue is not ripe for decision as said records were never entered into evidence. In fact, when counsel for DHS attempted to cross-examine appellant about these records, the trial court ruled that counsel could not read from those records as no foundation had been laid.
Assuming, arguendo, DHS improperly obtained the records contrary to federal regulations, we find any such error in obtaining the records harmless as those records were never entered into evidence.
Next, regarding appellant's assertion the records from Quest Recovery Services were improperly admitted into evidence, we find no violation of either federal or state statute as no records of treatment, diagnosis, or prognosis were admitted into evidence.
Although we question whether the ex parte order for the production of the Quest records is a matter which falls within the purview of Juv. R. 13 (E), we find it unnecessary to address the issue in the case sub judice. Assuming, arguendo, Juv. R. 13 applies and further assuming the trial court violated the procedural mandates therein, since the Quest records contained no evidence of treatment, diagnosis, or prognosis, any error by the trial court in failing to provide appellant with notice and the opportunity to be heard is harmless.
Although we chose not to specifically address the issue of whether or not the Veterans Hospital or Quest records would be admissible at this time, we note evidence of appellant's failure to attend the programs required by his case plan is admissible regardless of the statutes or the juvenile rule.
Appellant's first assignment of error is overruled.
 II
In his second assignment of error, appellant contends the judgment terminating his parental rights and granting permanent custody of his minor children to DHS was against the manifest weight of the evidence.
We are not fact finders; we neither weigh the evidence nor judge the credibility of witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. Cross Truck v.Jeffries (Feb. 10, 1982), Stark App. No. CA-5758, unreported. Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence.C.E. Morris Co. v. Foley Construction (1978), 54 Ohio St.2d 279.
The relevant statute is R.C. 2151.414. The statute provides, in pertinent part:
 (B) The court may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:
 (1) The child is not abandoned or orphaned and the child cannot be placed with either of his parents within a reasonable time or should not be placed with his parents;
In determining the best interest of a child, R.C. 2151.414(D) states:
 (D) . . . the court shall consider all relevant factors, including, but not limited to, the following:
 (1) The reasonable probability of the child being adopted, whether an adoptive placement would positively benefit the child, and whether a grant of permanent custody would facilitate an adoption;
 (2) The interaction and interrelationship of the child with his parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child;
 (3) The wishes of the child, as expressed directly by the child or through his guardian ad litem, with due regard for the maturity of the child;
(4) The custodial history of the child;
 (5) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency.
Kelli Williams, the DHS social worker, testified neither child exhibited any special physical, mental, or emotional needs. Further, Williams stated that Brittanie's foster parents were willing to adopt her, and were also interested in adopting Shequeal. Additionally, Williams noted that the children's other sibling's foster parents were also interested in adopting Shequeal. Neither child exhibited bonding with either parent or any other biological member of their family.
We find the trial court's finding that it was in Shequeal and Brittanie's best interests to grant permanent custody to DHS is not against the manifest weight of the evidence.
However, a best interest determination is not sufficient to grant permanent custody of a child to an agency and divest parents of their parental rights. In the instant case, the trial court further found, pursuant to R.C. 2151.414(B)(1), that Shequeal and Brittanie were not abandoned or orphaned and could not be placed with their parents within a reasonable time or should not be placed with their parents. In reaching this determination, the trial court relied upon R.C. 2151.414(B) through (E).
The record reveals, although appellant has a chemical dependency, he was unwilling to utilize the services of Quest. Furthermore, although appellant had been arrested and incarcerated for domestic violence against mother, he failed to attend the anger management program at Choices for Men. Appellant did not obtain appropriate independent housing as required by the case plan. Most importantly, appellant failed to establish paternity, and to visit the children in a consistent manner.
In light of the foregoing, we find the trial court's finding that Shequeal and Brittanie could not be placed with appellant within a reasonable time or should not be placed with appellant is not against the manifest weight of the evidence.
Appellant's second assignment of error is overruled.
 III
In his third assignment of error, appellant asserts the trial court's termination of his parental rights and decision to grant permanent custody of the minor children to DHS was not established by clear and convincing evidence that DHS made a diligent effort to reunite the family.
R.C. 2151.419 requires the trial court to determine whether the agency filing the complaint for custody "has made reasonable efforts * * * to eliminate the continued removal of the child from his home, or to make it possible for the child to return home." Subsection (B) mandates the trial court to issue written findings of fact setting forth the reasonable efforts made by the agency, including a brief description of "the relevant services provided by the agency to the family of the child and why those services did not prevent the removal of the child from his home or enable the child to return home."
In its judgment entry, the trial court did not expressly set forth the findings contemplated by R.C. 2151.419[3]. However, we find the ultimate issue is the reasonableness of DHS's efforts, and we conclude those efforts may be determined from the record.
Appellant has failed to point to anything in the record which establishes that DHS did not accommodate appellant's requests for assistance. DHS developed a case plan which outlined a plan of reunification for the family. Over the period of one and one half years, DHS monitored appellant's compliance with the case plan.
The case plan included weekly visitation for appellant with his children. Because appellant did not attend the scheduled visits on a weekly basis, DHS modified the case plan to require only biweekly visits. By this action, DHS actually lessened the burden on appellant to comply with a vital aspect of the case plan. In October, 1995, the trial court ordered DHS to pay for appellant's Choices' course materials. Although appellant's social worker gave him the telephone number for Choices, appellant never attended the requisite anger management classes nor followed up when he was told he was on a waiting list.
Once the department established a case plan and in the absence of any evidence showing DHS failed to respond to any of appellant's requests for assistance, the agency cannot force appellant to go to the programs set forth in the case plan. R.C.2151.419 does not require the agency to make curative efforts.See, e.g., In re: Pieper Children (1993), 85 Ohio App.3d 318,326. We note the reasonableness of DHS efforts must be evaluated on a case by case basis. In a situation where a parent is unable, through no fault of his or her own, to comply with the case plan, DHS would be required to make reasonable efforts to assist the party in complying with the case plan. However, where, as here, a parent is merely unwilling to comply with the case plan, DHS has no obligation to take efforts to secure compliance with the case plan.
Appellant's third assignment of error is overruled.
The Judgment Entry of the Stark County Court of Common Pleas, Family Court Division, is affirmed.
By: Hoffman, J., Gwin, P.J. and Reader, J. concur.
 JUDGMENT ENTRY
CASE NO. 97CA0278
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Stark County Court of Common Pleas, Family Court Division, is affirmed. Costs assessed to the appellant.
[1] Since the mother has filed a separate appeal, the remainder of our Statement of the Facts and Case shall include only the facts relevant to appellant.
[2] The record is devoid of any evidence showing such releases were ever executed.
[3] Appellant has not asserted any error in the failure of the trial court to set forth its findings in this regard.