OPINION
{¶ 1} On March 26, 2002 L.G. was adjudicated to be a dependent child, and he was placed in the temporary custody of the Montgomery County Childrens Services Board (MCCSB). After an extension of temporary custody, MCCSB sought permanent custody. The child's mother, Chatiya Cranford, filed a motion for legal custody. A hearing was held, and the trial court terminated Cranford's parental rights, granting permanent custody of L.G. to MCCSB. Cranford filed objections to the magistrate's decision, which the trial court overruled. Cranford now appeals. For the following reasons, we affirm the decision of the trial court.
 I {¶ 2} Ten-month-old L.G. came into the custody of MCCSB after his mother called the police and told them that she was going to kill the baby if someone did not get him away from her. Police arrived and removed the child from the home. Cranford was observed yelling at the child and being very rough with him.
 {¶ 3} Cranford's older child had previously been placed in the permanent custody of MCCSB. While that child is not the subject of this appeal, we mention the child for background information and to illustrate that MCCSB had previously had a case plan with Cranford.
 II {¶ 4} Cranford's assignment of error:
 {¶ 5} "The trial court's decision to grant permanent custody of [L.G.] to the Montgomery County Childrens Services Board was improper."
 {¶ 6} In her sole assignment of error, Cranford claims that the trial court's decision to grant permanent custody of her son to MCCSB was not supported by clear and convincing evidence. However, we disagree. The agency made a good faith effort to reunify the family. The record demonstrates clear and convincing evidence that the child could not be placed with either parent in a reasonable period and that he should not be placed with either parent. It also illustrates that granting permanent custody of the child to MCCSB was in his best interest.
 {¶ 7} A trial court shall grant permanent custody of a child to the movant if the court determines that the child cannot be placed with either of his parents in a reasonable period of time or that he should not be placed with either of his parents, and if permanent custody is in the child's best interest. R.C. §§ 2151.414(B)(2) and 2151.414(E). A determination of the child's best interest must be based on clear and convincing evidence. R.C. § 2151.414(B). Clear and convincing evidence is proof that produces "in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." In re PieperChildren (1993), 85 Ohio App.3d 318, 326, 619 N.E.2d 1059, citations omitted. As a reviewing court, we must affirm the trial court's decision unless its determinations "`are not supported by sufficient evidence to meet the clear and convincing standard of proof.'" In re McCormick (Jan. 7, 2000), Clark App. Nos. 98 CA 47, 98 CA 48, citations omitted.
 {¶ 8} MCCSB developed a case plan for reuniting L.G. and Cranford. However, in two years Cranford failed to complete many of the plan's objectives, and she made only limited progress in relation to other objectives.
 {¶ 9} One major problem is Cranford's continued refusal to maintain employment. As a result, she has no income. When she does find jobs, she promptly quits them. Moreover, Cranford consistently failed to take advantage of any of the resources offered by the job center. On one occasion, Cranford was denied employment after failing a drug screening due to her use of cocaine. Despite two separate tests indicating the presence of cocaine in her system, Cranford continued to deny any drug use. Thus, the trial court had serious concerns about Cranford's "significant substance abuse problems that have not been addressed." Furthermore, for several months she lied to her caseworker, reporting that she was working at that job. Also related to monetary issues, Cranford refused to provide a budget as required by the case plan.
 {¶ 10} In spite of her decision not to maintain employment, Cranford lived in an apartment because both the rent and the utilities were paid for directly by a government allotment. However, she had no furniture in the apartment, claiming that it had been stolen. Nevertheless, Cranford frequently refused to allow the caseworker to enter the apartment. Additionally, Cranford consistently refused to allow MCCSB access to the second floor, so it could not be determined whether there was a bedroom for the child, or if so, whether it was appropriately furnished. With no income Cranford was unable to provide food, basic toys, and clothing for the child.
 {¶ 11} On several occasions, Cranford refused to demonstrate that she had food in the apartment. While she received food stamps for a while, those benefits were terminated because Cranford refused to appear for appointments. Inexplicably, Cranford refused MCCSB's numerous offers for help in getting furniture and food. Thus, while Cranford had a tenuous hold on housing, it could not be said to be adequate.
 {¶ 12} Cranford failed to complete the counseling through Family Services Association as recommended by the case plan. Despite referrals to three different programs, she attended only one session and then lied to the caseworker, claiming that she had been told that she did not need counseling. Moreover, Cranford refused to sign a release of information, so that MCCSB could not obtain records from Family Services Association. Thus, it is unknown whether further sessions were attended or whether any progress was made.
 {¶ 13} Additionally, Cranford failed to maintain contact with her child. She cancelled well over half of the scheduled visits, including the Christmas visit in 2003. At least one visit was cancelled because she did not have food in her apartment for the child. However, on most occasions Cranford offered no explanations for the repeated cancellations. Cranford failed to demonstrate a commitment to the child.
 {¶ 14} Cranford also failed to develop parenting skills. She was given a list of several class options, but she failed to choose one on her own, so her caseworker chose one for her. At first, Cranford attended only two of five scheduled classes, missing at least one because she was incarcerated on felony burglary charges and for violation of her probation for a forgery conviction. Therefore, her criminal lifestyle "certainly raise[d] questions about her availability to parent the child on a consistent and regular basis." Cranford did eventually complete the parenting classes.
 {¶ 15} Nevertheless, Cranford failed to demonstrate any behaviors that she might have learned from the parenting course. Instead, she continued to be completely controlling of L.G.'s environment and would not allow him to play and explore as he chose. She failed to control her temper and threw toys on the floor. Additionally, she refused to engage the child during visitation. Instead, she wasted the time by verbally confronting the case worker, including threatening to physically harm her. Cranford refused to allow L.G. to have any interaction with the caseworker, covering his mouth when he tried to speak and pushing him away from the caseworker, scaring the child. During visitations, the child was timid and constantly sought his mother's approval. However, in his foster home, he was active and playful.
 {¶ 16} Cranford was willing to provide the name of only one possible father, who was genetically excluded. She refused to provide any other names, thus denying L.G. the possibility of a relationship with his father or with his paternal family. Significantly, this also meant that the father and paternal family could not be considered for custody either.
 {¶ 17} Finally, MCCSB showed that L.G. had been in foster care for the twenty-three months preceding the permanent custody trial. He was progressing well with the foster family, who wanted to adopt him.
 {¶ 18} Because Cranford consistently failed to comply with her case plan, we cannot find that the trial court erred in finding by clear and convincing evidence that the child could not be placed with his mother in a reasonable period of time and that he should not be placed with his mother. We also find that the record supports the trial court's finding that permanent custody was in the child's best interest. Cranford's sole assignment of error is without merit and is overruled.
 III {¶ 19} Having overruled Cranford's sole assignment of error, the judgment of the trial court is AFFIRMED.
Wolff and Grady, JJ., concur.
(Hon. Frederick N. Young, Retired from the Court of Appeals, Second Appellate District, Sitting by Assignment of the Chief Justice of the Supreme Court of Ohio)