OPINION *Page 3 
{¶ 1} Appellant, Dawn Bugaj, appeals from three Belmont County Common Pleas Court, Juvenile Division decisions finding her children to be dependent and granting their temporary custody to appellee, the Belmont County Department of Job and Family Services.
 {¶ 2} Appellant has three children: Antonia (d.o.b. 5-20-97), Jonathan (d.o.b. 11-20-02), and Joseph (d.o.b. 12-10-03). Antonia's father is Joshua Snider. Jonathan's and Joseph's father is Chad Wilke.
 {¶ 3} On January 18, 2006, appellee filed complaints alleging that the children were dependent. In the complaints, appellee stated that it received a report from the Belmont County Sheriff's Department that appellant and two male friends were arrested and charged with child endangerment and possession of drug paraphernalia. It noted that appellant denied using drugs and stated that she did not know about the drug paraphernalia. The report stated that on December 30, 2005, when a deputy arrived at the apartment where appellant and her children were, he noticed a heavy odor of marijuana. Appellant had gone out the previous night and left her children in the care of her friends, Brant Tomolonis and Manuel Miller. The deputy found Tomolonis passed out on the living room floor. Appellant was present when the deputy arrived at the apartment. The deputy's report stated that all adults seemed to be under the influence of alcohol and drugs. Appellant denied that allegation. The complaints also stated that appellee has received prior reports about appellant's care of her children. Based on these allegations, appellee requested that the court grant it either protective supervision or temporary custody of the children.
 {¶ 4} The matter proceeded to a hearing before a magistrate. Appellant denied the allegations in the complaints while the children's fathers stipulated to the allegations. The magistrate heard testimony from the deputy who was involved in appellant's criminal matter and from the children's intake worker from the department of job and family services. The magistrate did not make any findings of fact. However, the magistrate found that appellee did not prove the allegations in the complaints by clear and convincing evidence and, therefore, he found the children *Page 4 
were not dependent. The magistrate recommended that the complaints be dismissed.
 {¶ 5} Appellee filed objections to the magistrate's decision arguing that it proved by clear and convincing evidence that the children were in danger on December 30, 2005, due to the condition of their environment. It asked the court to overturn the magistrate's decision, declare the children dependent, and grant it protective supervision of the children.
 {¶ 6} The trial court stated that it would review the tapes of the hearing before ruling on the objections. The trial court subsequently overruled the magistrate's decision. The court relied on the testimony of Deputy Mike Stauffer as to the state of the apartment, the intoxicated state of the adults in the apartment, and the smell of marijuana in the apartment. The court found the children to be dependent and granted their temporary custody to appellee. Appellant filed timely notices of appeal on May 5, 2006.
 {¶ 7} Appellant raises a single assignment of error, which states:
 {¶ 8} "THE TRIAL JUDGE ERRED IN OVERRULING THE DECISION OF THE MAGISTRATE TO DISMISS THE COMPLAINT AS THE JUDGMENT OF THE TRIAL JUDGE IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 9} Appellant argues that the evidence does not support the trial court's findings. She asserts the following. There was no proof that anyone consumed drugs or alcohol in front of the children or that appellant used drugs and alcohol. While there was evidence of the odor of marijuana, there was no evidence that marijuana smoke was observed. Therefore, the odor could have been left over from prior usage by the tenant of the apartment. The evidence only indicated that one of the three adults in the apartment was under the influence of alcohol. Appellant was cooperative and forthcoming with the investigation. The children were properly fed and clothed and the deputy had no concerns regarding their physical condition.
 {¶ 10} Given this evidence, appellant contends that while the deputy may have had some concerns regarding her children, the evidence before the court failed *Page 5 
to rise to the level of being clear and convincing evidence of dependency.
 {¶ 11} Trial courts have broad discretion in determining whether to overrule a party's objection to a magistrate's decision. In reLaughlin, 7th Dist. No. 02-CA-55, 2002-Ohio-5234, at ¶ 11. Appellate courts will not reverse the trial court absent an abuse of that discretion. Booth v. Booth (1989), 44 Ohio St.3d 142, 541 N.E.2d 1028. Abuse of discretion connotes more than an error in judgment; it implies that the court acted in a manner that was unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219,450 N.E.2d 1140.
 {¶ 12} A dependent child, as the court found in this case, is a child "[w]hose condition or environment is such as to warrant the state, in the interests of the child, in assuming the child's guardianship." R.C.2151.04(C). In determining whether a child is dependent, the focus should be on the child's condition and environment and not on the conduct of the parent. In re Pitts (1987), 38 Ohio App.3d 1, 3,525 N.E.2d 814. However, the court may consider the conduct of the parent insofar as it forms part of the child's environment. In re Burrell
(1979), 58 Ohio St.2d 37, 39, 388 N.E.2d 738. The parent's conduct, as part of the child's environment, is significant if it can be demonstrated to have an adverse impact on the child sufficient to warrant state intervention. Id.
 {¶ 13} Dependency must be proven by clear and convincing evidence. R.C. 2151.35(A). Clear and convincing evidence is, "that measure or degree of proof which is more than a mere `preponderance of the evidence,' but not to the extent of such certainty as is required `beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." Cross v. Ledford (1954),161 Ohio St. 469, 120 N.E.2d 118, paragraph three of the syllabus.
 {¶ 14} The evidence from the magistrate's hearing was as follows.
 {¶ 15} First, Deputy Mike Stauffer testified. Stauffer stated that on December 30, 2005, he investigated a loud music complaint at an apartment. (Tr. 15-16). According to Stauffer, appellant either told him that the apartment belonged to her *Page 6 
husband or ex-husband. (Tr. 16).
 {¶ 16} When Stauffer arrived at the apartment, he knocked on the door for approximately five minutes with no response. (Tr. 17). However, two children came to the window, looked out, closed the blinds, and then left. (Tr. 17). Stauffer asked the apartment manager to use a passkey to let him into the apartment. (Tr. 17). When Stauffer entered the apartment, he found a man passed out on the living room floor. (Tr. 17). Stauffer observed the two children sitting on the couch watching television. (Tr. 17). Stauffer also found appellant and another man in the bathroom with a third child. (Tr. 18).
 {¶ 17} When asked what gave him concern for the children's safety, Stauffer testified that he found the following. He stated that the smell of marijuana in the apartment was "sickening." (Tr. 19). He also stated that he observed beer cans lying all over the apartment. (Tr. 19). Additionally, he found drug paraphernalia containing cocaine residue on the table. (Tr. 20). Finally, Stauffer stated that the apartment was dirty. (Tr. 22). He concluded that these conditions were not appropriate for children. (Tr. 47).
 {¶ 18} Stauffer also testified about the people in the apartment. He stated that the man passed out on the floor was very intoxicated and was not cooperative. (Tr. 22). Stauffer stated that appellant and the other man were cooperative and denied drinking or having anything to do with drugs. (Tr. 22). However, Stauffer observed that their eyes were glassy. (Tr. 23). On cross-examination, Stauffer stated that although he had a breath-testing device with him, he did not test appellant. (Tr. 37). And he later stated that appellant appeared sober. (Tr. 52).
 {¶ 19} Given what he found, Stauffer felt the apartment was no place for children. (Tr. 24). He stated that he was there at 11:35 a.m. (Tr. 24). Appellant told him that she had brought the children there the previous night so that she could go out. (Tr. 24-25). She left the children in the care of the two men who were there until she returned at 1:30 a.m. (Tr. 25). Stauffer testified that appellant was charged with child endangering and possession of drug paraphernalia. (Tr. 26). *Page 7 
 {¶ 20} But Stauffer also testified that nothing about the children's physical condition gave him any concern. (Tr. 25). And he stated that they did not appear to be in any distress or danger. (Tr. 39, 40). Stauffer also testified that the children appeared to be properly fed and clothed. (Tr. 44).
 {¶ 21} Additionally, Stauffer testified about another incident involving appellant. He was directed to investigate a particular room at a local hotel because it was believed that a man was there who had two warrants out for his arrest. (Tr. 31-32). When he knocked on the hotel room door, appellant answered. (Tr. 32). Stauffer also found the man there with the outstanding warrants and drug paraphernalia containing cocaine and marijuana residue. (Tr. 33-34).
 {¶ 22} The only other witness to testify was Nichole Cordery, the intake worker at the department of job and family services assigned to appellant's case. She stated that appellant and her children came to her attention by way of Stauffer's police report. (Tr. 54). Cordery testified that the conditions Stauffer testified to finding in the apartment were the basis of appellee's complaint alleging dependency. (Tr. 54). She further stated that appellant has not been cooperative with appellee in this matter. (Tr. 56-57). When asked why she believed the children were dependent, Cordery stated that the apartment was not an appropriate environment for children and the two men there had babysat the children the previous night. (Tr. 62).
 {¶ 23} The magistrate and trial court also had the guardian ad litem's reports, which were filed with the court, for their consideration. The guardian ad litem, Sandra Nicholoff, stated that she visited the home of appellant's parents and spoke with the children's maternal grandmother, Gloria Bugaj. Mrs. Bugaj informed Nicholoff that appellant was planning to move to Georgia in the next week or two and planned on staying with friends until she found a job and a residence. Mrs. Bugaj stated that appellant planned to take the two boys and leave Antonia with her to finish out the school year.
 {¶ 24} Nicholoff noted that all three children appeared generally healthy and *Page 8 
happy. Mrs. Bugaj informed Nicholoff that appellant and the children had primarily resided with her and her husband since the children were born. Nicholoff noted that Mr. and Mrs. Bugaj appeared to provide a large financial and emotional support for appellant and the children.
 {¶ 25} Nicholoff was concerned with the fact that appellant, in her eight-year-old daughter's presence, repeatedly mentioned a past incident where Antonia's stepmother put a knife to Antonia's throat.
 {¶ 26} Appellant told Nicholoff that Antonia was deeply troubled by the fact that appellee might take her and her brothers away from appellant.
 {¶ 27} Additionally, Nicholoff reported that appellant blamed her current situation on various prosecutors, judges, and attorneys being mad at her and the police wanting to "teach her a lesson."
 {¶ 28} When Nicholoff asked appellant about the caliber of friends that she kept, appellant defended her friends stating that she does not judge people for what they do, but instead sees the good in people. And appellant adamantly denied using drugs.
 {¶ 29} Based on her investigation, Nicholoff recommended that the court grant appellee protective supervision of the children. She further recommended that the children be placed with Mrs. Bugaj.
 {¶ 30} The magistrate did not make any findings in his written decision. However, at the conclusion of the hearing, he stated that the evidence did not rise to the level of clear and convincing. However, he went on to tell appellant that she came dangerously close. He also told her that she spends too much time partying and does not keep good company.
 {¶ 31} The trial court framed the issue before it as, "whether children subjected to the presence of drugs and alcohol, in the presence of intoxicated persons, and in an apartment that is extremely dirty, although [the] children appear to be in good physical condition, can be determined to be dependent children." It found that in this case, the children were dependent. The court reasoned that it was *Page 9 
obvious that the drug and alcohol consumption by the adults in the apartment took place in front of the children. It stated that the marijuana smoke may have a detrimental effect on the children's well being and care. Furthermore, it concluded that the condition of the adults in the apartment made it wonder whether the children were appropriately cared for. The court did note that appellant denied using drugs or alcohol. However, it stated that the condition of one of the other people in the apartment raised a question as to whether harm could have been done to the children. The court reasoned that the fact that appellant was in one area of the apartment while two of the children were in the living room with a highly intoxicated person further supported its finding.
 {¶ 32} The evidence showed that the children appeared properly fed and clothed. However, the fact that the children's physical needs were being met does not necessarily lead to the conclusion that they are not dependent. Furthermore, the incident that led to the complaint in this case appears to have been an isolated one. The concerning environment in which Stauffer found the children does not appear to have been their home. Appellant stated that she dropped the children off at the apartment the previous night. And Mrs. Bugaj reported that appellant and the children generally reside with her. But the fact that the children generally live in an appropriate home, again does not automatically lead to the conclusion that they cannot be dependent.
 {¶ 33} The children were found in an apartment that was filled with the "sickening smell" of marijuana. Although, as appellant argues, there was no evidence that Stauffer observed marijuana smoke, one could conclude that if the smell was sickeningly strong, as Stauffer testified, that the people in the apartment had recently been smoking marijuana. And it is reasonable to conclude that children should not be in an apartment where the smell of marijuana is present. Additionally, cocaine residue was found on drug paraphernalia in the apartment. While there was no proof that anyone used cocaine in front of the children, it again is reasonable to conclude that children should not be in an apartment where cocaine is being used *Page 10 
and the remnants of its use are lying about. Furthermore, the evidence demonstrated that the apartment was dirty and littered with beer cans. Once more, it is reasonable to conclude that children should not be in such a place.
 {¶ 34} Appellant argues that there was no evidence that she used drugs or consumed alcohol. This is true. However, the evidence did show that appellant left her children in the care of two men, one of whom drank to the point of passing out, in a dirty apartment where drug use took place so that she could go out. Thus, clear and convincing evidence existed from which the trial court could conclude that the children were dependent.
 {¶ 35} The evidence in this case borders on the line of clear and convincing evidence of dependency. If this court were permitted to review the matter de novo, we might properly find that the children were not dependent. However, we are restricted in this case by the standard of review. We are limited to determining whether the trial court abused its discretion in granting appellee's objection to the magistrate's decision and whether sufficient, credible evidence exists to support the trial court's adjudication. See, In re Pieper Children (1993)85 Ohio App.3d 318, 619 N.E.2d 1059. Because clear and convincing evidence exists on the record to support the trial court's determination, we cannot conclude that the court abused its discretion in sustaining appellee's objection. Accordingly, appellant's sole assignment of error is without merit.
 {¶ 36} For the reasons stated above, the trial court's judgment is hereby affirmed.
Vukovich, J., concurs.
 Waite, J., concurs. *Page 1