OPINION
In this case, Mario Williams, Sr., appeals from an order terminating his parental rights and granting permanent custody of his minor daughter, Amanda, to the Montgomery County Children Services Board (CSB). Originally, Amanda and her siblings came under the care of another Children Services Board (Trumbull County) in 1994, after Mario broke his son's leg. Mario was incarcerated for this crime and was still in prison in February, 2000, when his parental rights were terminated. Amanda's mother has been absent since around 1994, and her whereabouts are unknown.
The issue in this case is whether Amanda's aunt, Tammy, was a suitable legal custodian. According to Mario, the trial court's rejection of Tammy was not supported by clear and convincing evidence. However, we disagree.
Under R.C. 2151.414(B), the trial court may give an agency permanent custody if it decides, by clear and convincing evidence, that the action is in the best interests of the child. Clear and convincing evidence is proof that produces "in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." In re Pieper Children (1993), 85 Ohio App.3d 318,326 (citations omitted). Our own role is to affirm the trial court's decision on parental rights unless its determinations are " `not supported by sufficient evidence to meet the clear and convincing standard of proof.'" In re McCormick (Jan 7, 2000), Clark App. Nos. 98 CA 47, 98 CA 48, p. 5 (citations omitted).
At the time CSB was awarded permanent custody, R.C. 2151.414(D) instructed courts to consider all relevant factors in determining a child's best interests, including (but not limited to):
 (1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child;
 (2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
(3) The custodial history of the child;
 (4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency.
Our review of the evidence indicates that the trial court appropriately considered all relevant factors. In particular, the trial court made 43 findings of facts which focused on Amanda's relationships with relatives, her expressed wishes, her custodial history, and the need for a legally secure placement. Among other things, the court found that placement with either paternal aunt would not be in Amanda's best interest. This conclusion is amply supported by the record.
According to the testimony, Amanda was about six years old when Children Services first became involved with the Williams family. Between the ages of six and ten, i.e., from 1994 through May, 1998, Amanda was placed in at least five foster homes, including the home of her great-aunt, Patricia Shaver. During this time, Amanda had behavioral problems (lying, stealing, and temper tantrums). Eventually, Amanda ran away from Shaver's home in May, 1998.
From February, 1998, through May, 1998, Linda Odom had provided respite care on weekends for Amanda and two of Amanda's siblings. Odom operated a treatment foster home, which focused on behavior intervention and crisis intervention. After Amanda ran away, Shaver told CSB that she could no longer care for Amanda. As a result, Amanda was placed in Odom's home on a full-time basis, and CSB filed for permanent custody.
After Amanda began living full-time with Odom, her behavior significantly improved. By the time of the first hearing in January, 1999, Amanda was doing well in school and had stopped lying and stealing. Odom testified at the hearing, and said that when Amanda first came for respite care, Amanda fulfilled the role of mother and caretaker for her siblings. Amanda functioned in an adult role and got along with adults until she was told to do something. Then, she became obstinate. According to Odom, Amanda had changed a great deal and now functioned more like a child should. Odom also said that she loved Amanda, and wanted to adopt her if CSB received permanent custody.
 On May 26, 1999, the magistrate held an in camera interview with Amanda. The interview revealed that Amanda was happy living with Odom and did not want to move. Amanda was still doing well in school, was involved in activities outside school, like gymnastics, and appeared to have adjusted well to her surroundings.
As we mentioned, Amanda's father, Mario, was in prison at the time of the custody proceedings. However, Mario had two sisters who expressed a desire to assume custody. Because the sisters both lived in Trumbull County, the Children Services Board for that county performed home studies. After doing studies, the Trumbull County CSB rejected one sister, Deanna, because she had no reported income and had an unfavorable psychological evaluation.
Trumbull County also did not recommend that Amanda be placed with the second sister, Tammy Williams. At the time, Tammy had three teen-age children and a young grandchild living in her home. Tammy had a long history with the Trumbull County CSB, including a 1987 physical abuse charge that was substantiated. In that particular instance, Tammy beat her son with an extension cord. During the hearing, Tammy admitted that she went overboard on one occasion on discipline. However, she claimed she had only spanked her son.
Additionally, Tammy's husband was accused in 1991 of sexually abusing one of Tammy's daughters. Accounts about this charge differed. For example, the caseworker testified that Tammy was told about the abuse by her children, but did not believe them. Thereafter, she did nothing to protect the children from the abuse, and it continued. Tammy's account was that she did not know about the abuse. In any event, Tammy lost custody of her children for about a year as a result of the sexual abuse problem.
Trumbull County CSB also had concerns about Tammy's mental health, based on her 1991 and 1996 hospitalizations for depression and anxiety. Additionally, the agency investigated another physical abuse allegation against Tammy in 1994, but this abuse allegation was not substantiated. Subsequently, the file remained open for ongoing services until July, 1996. Since the last agency intervention was in 1996, the caseworker felt that Tammy was probably now doing an adequate job with the children already in her own home. However, the caseworker was concerned about the stress that would be caused by adding a troubled eleven year old child into the mix. Moreover, Amanda had been sexually abused in the past, and caseworkers were concerned over Tammy's potential receptivity to Amanda's situation. In view of all these facts, Trumbull County did not recommend that Amanda be placed with Tammy.Tammy testified at a hearing which was held on May 11, 1999, or before the trial court's in camera interview with Amanda. At that time, Tammy expressed a desire to have Amanda live with her. However, she also testified that Amanda's wishes were important, and that Amanda was old enough to make her own decisions. In particular, Tammy told the court that if Amanda wanted to live with her foster mother and to be adopted, she would honor Amanda's wishes.
As we said, Amanda was later interviewed in camera by the trial court. Before the interview, Amanda spoke with her Aunt Tammy. Amanda told her aunt that she was happy with her current living conditions and did not want to live with her aunt and cousins. Amanda also explained to her aunt that she did not want to move, and that she had problems she needed to work on, including anger and talking about her feelings.
We think this evidence clearly supports the trial court's decision to award permanent custody to CSB. There was no dispute about the fact that Amanda's father was imprisoned for a child abuse charge and would not be available to care for her within the time mandated by statute. Amanda's mother had also clearly abandoned her children. Consequently, the trial court correctly found that Amanda could not be placed with either parent within a reasonable time.
Although not disputing these facts, Mario nonetheless seems to feel that a relative's willingness to assume custody outweighs all other matters. We cannot agree. In the first place, R.C.2151.414(D) says that courts must consider all relevant factors, not just one. Moreover, the statute does not assign different weights to particular factors or relationships. Therefore, we think the trial court properly considered all aspects of Amanda's life and her relationships when deciding what course of action would be in Amanda's best interest. And finally, we have previously said that courts do not have to first consider placing children with relatives before they may award permanent custody to a children services agency. In the Matter of Barker (June 16, 2000), Champaign App. No. 20001, unreported, p. 9. Consequently, the trial court did not err when it rejected placement with Amanda's paternal aunt.
In light of the preceding discussion, the single assignment of error is without merit and is overruled. Accordingly, the judgment of the trial court is affirmed.
 _____________________ BROGAN, J.
GRADY, P.J., and WOLFF, J., concur.