This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Charles and Christina Laird appeal the decision of the Wayne County Court of Common Pleas, Juvenile Division, terminating their parental rights and granting permanent custody of their son Michael to Wayne County Children Services Board. This court affirms.
 I.
Michael Laird was born on January 19, 1997, to Charles and Christina Laird. Michael lived with his parents for the first two years of his life. Wayne County Children Services Board (hereafter "WCCSB") became involved with the Laird family as soon as Michael was born, because of concerns that Charles and Christina had limited parenting ability. Charles and Christina have been assessed as being mildly mentally retarded, with IQ's of 76 and 60, respectively. On December 11, 1998, WCCSB filed a complaint in juvenile court alleging that Michael was a dependent child, due to the limited functioning of his parents and due to an unsanitary and unsafe home environment.
On February 23, 1999, the juvenile court found Michael to be a dependent child and awarded temporary custody to WCCSB, and Michael was placed in a foster home. The court extended the grant of temporary custody twice, each time for a period of six months. On May 12, 2000, WCCSB filed a motion for a grant of permanent custody. On November 30 and December 1, 2000, the court held a hearing on the matter of permanent custody. On January 2, 2001, the juvenile court issued an order terminating the parental rights of Charles and Christina Laird, and awarding permanent custody to WCCSB.
Charles and Christina filed the instant appeal, assigning three errors.
 II.
ASSIGNMENT OF ERROR NO. I.
 THE JUVENILE COURT'S DECISION TO AWARD PERMANENT CUSTODY TO THE WAYNE COUNTY CHILDREN SERVICES BOARD WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
ASSIGNMENT OF ERROR NO. II
 THE JUVENILE COURT ERRED BY AWARDING PERMANENT CUSTODY TO THE WAYNE COUNTY CHILDREN SERVICES BOARD WITHOUT GIVING DUE CONSIDERATION TO ARRANGEMENTS WHICH WOULD MEET THE CHILD'S NEEDS WHILE NOT TERMINATING PARENTAL RIGHTS
 Charles and Christina's first assignment of error challenges the weight of the evidence supporting the trial court's decision. Because the second assignment of error relates to the trial court's best interest determination, we will consider these two assignments of error together.
Where a child's parents have not abandoned him, a court may terminate parental rights only if it has clear and convincing evidence to support a determination that permanent custody is in the child's best interest and a finding of certain facts relative to the child's custodial situation. See R.C. 2151.414(B)(1). Clear and convincing evidence is that which produces in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established. In re Estrada and Castillo (May 24, 2000), Summit App. No. 19683 and 19817, unreported, at 5.
When an appellate court reviews the weight of the evidence in a permanent custody determination, the court reviews the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether the trial court clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed. In re James (Oct. 14, 1998), Summit App. No. 18936, unreported, at 6.
 A. Custodial Situation
In addition to finding that permanent custody is in the child's best interest, the court may terminate parental rights if there is clear and convincing evidence that the child has been in the custody of the children services agency for twelve months in a consecutive twenty-two month period. R.C. 2151.414(B)(1). A child is considered in the agency's temporary custody from the earlier of the date of adjudication or sixty days following the child's removal from the home. Id. In the instant case, it was undisputed that Michael was adjudicated dependent and place in foster care on February 23, 1999. WCCSB filed the motion for permanent custody on May 12, 2000. By that time, Michael had been in the agency's custody for more than twelve months. Because of these circumstances, the trial court needed only to determine whether the termination of parental rights was in Michael's best interest.
 B. Best Interest Determination When considering the best interest of the child, the court shall consider all relevant factors, including, but not limited to, the following:
 The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
 The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 (3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 (4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
* * *
R.C. 2151.414(D).
The following evidence was established at the permanent custody hearing. Christina and Charles cared for Michael for the first two years of his life apparently with little outside support. Charles and Christina took Michael to all his well-baby appointments and Michael got all his required immunizations. Michael appeared to be well-fed while in their care.
WCCSB caseworker Kathy Smith was assigned to the Laird family on April 3, 1998, and she has remained involved with the Lairds since that time. Ms. Smith testified that she visited the Lairds' small apartment in Orrville once a week. Michael was almost always in his crib, his diaper was wet and reeking of urine, and often Michael's parents could not say when they last fed him. The small house was cluttered and filled with bags of rotting garbage. There were dirty diapers scattered on the floor and feces smeared on Michael's bedroom wall. In the fall of 1998, WCCSB contacted an outside cleaning agency to assist the Lairds in cleaning up the house and making it safe for Michael. The Lairds only minimally cooperated with the agency. By December 3, 1998, the house was still not sufficiently clean and safe for Michael to reside there.
Charles and Christine attended and completed parenting classes, participated in visits with Michael, secured new housing, and maintained a cleaner home than the previous residence. However, WCCSB case aides who observed the Lairds' interactions with Michael reported that both parents needed frequent reminders to attend to Michael's needs. Christina particularly had difficulty acting in an age-appropriate manner, and often seemed like a child, competing with Michael for toys and attention. When Michael verbalized a need, neither Christina nor Charles attended to that need without the social worker's direction to do so. In fact, often each parent would tell the other parent that a certain duty was his/her job to perform. According to the testimony of Dr. Marianne Bowden, the psychologist who performed the IQ tests on Charles and Christina, it would be almost impossible for the Lairds to properly raise Michael, given their intellectual abilities.
Charles and Christina regularly attended visitation sessions with Michael. Michael enjoyed his weekly visits with his parents. Michael has a close bond with his parents, and his two half-brothers, Charles' children from a previous marriage. The evidence established that although Michael had a close bond with his parents, that bond was more akin to that between siblings, due to his parents' inability to effectively parent a young child. All the testimony established that Michael loves his parents and they love him. No evidence was presented at the hearing that Charles and Christina could be effective parents, even with further training or assistance.
On February 23, 1999, Michael was placed with Mildred and John Cyrus, experienced foster parents who had raised five children of their own. Mr. Mrs. Cyrus were 60 and 52 years old respectively. Michael adapted well to the Cyrus home, and he made good progress developmentally while there. Michael remained in the Cyrus home until January 3, 2000.
In January 2000, WCCSB placed Michael in a family placement with Pamela and Steven Anshutz, Charles' cousins. The placement with Mr. Mrs. Anshutz was unsuccessful because Mr. Mrs. Anshutz did not want Michael to have ongoing contact with his parents. When Mr. Mrs. Anshutz found out that the Lairds would have ongoing visitation, they asked that Michael be removed from their house. In June 2000, Michael was returned to Mr. Mrs. Cyrus. He immediately adjusted to their home, and he is very close and affectionate with his foster parents. Mrs. Cyrus testified that she and her husband wanted to adopt Michael.
In September 2000, over four months after the permanent custody motion was filed, Charles and Christina asked that a relative be granted legal custody. However, the prospective legal guardian, Annelise Vandlen, lives in North Carolina with her husband and three children. The family had never met Michael until a few days before the permanent custody hearing, and then they only spent one hour with him They had not seen Charles and Christine in several years.
An interstate placement home study was ordered for the Vandlens. The evaluation determined that it would not be in Michael's best interest to place him with the Vandlens, because of the distance from his biological family and the total lack of familiarity between Michael and the Vandlens. The assessment observed that the Vandlens did not appear to appreciate the difficulties that might arise if Michael was placed with them. Mrs. Vandlen testified that if the court decided to give her legal custody of Michael, it would take several months to actually place him with her family. If Michael did move to North Carolina, Charles testified that he and Christina could drive there to visit Michael. Charles has a twenty-year-old car, but no driver's license. Other than the Vandlens, there were no relatives who could take Michael.
There was clear and convincing evidence that although Michael had close bonds with his biological family, those bonds were not that of parent and child. Michael was also close to his foster parents, who plan to adopt him. The guardian ad litem reported that he believed that Michael's best interest would be served by permanent custody. The guardian ad litem
acknowledged that Charles and Christina truly love Michael, but he concluded that they are incapable of effectively parenting him. The only possible relative who could assume legal custody of Michael lives six hundred miles away. This possible placement was totally untested and would permit only infrequent visits between Michael and his parents.
Given Michael's custodial history, his close bond with the foster parents, the prospect of adoption by his foster parents, and his family's inability to care for Michael, this court concludes that the trial court's best interest determination was not against the manifest weight of the evidence.
The first and second assignments of error are overruled.
 III.
ASSIGNMENT OF ERROR NO. III
 THE JUVENILE COURT ERRED BY AWARDING PERMANENT CUSTODY TO THE WAYNE COUNTY CHILDREN SERVICES BOARD WITHOUT MAKING ANY FINDINGS AS TO WHETHER THE BOARD MADE REASONABLE EFFORTS TO PREVENT REMOVAL OR RETURN THE CHILD TO THE HOME.
 Turning finally to the third assignment of error, Charles and Christina assert that the trial court failed to make any finding, pursuant to R.C. 2151.419, that WCCSB made reasonable efforts to prevent Michael's removal from their home, to eliminate the continued removal, and to return Michael to their care. The statute reads:
 at any hearing held pursuant to section 2151.28, division (E) of section 2151.31, or section 2151.314, 2151.33, or 2151.353 of the Revised Code at which the court removes a child from the child's home or continues the removal of a child from the child's home, the court shall determine whether the public children services agency or private child placing agency that filed the complaint in the case, removed the child from home, has custody of the child, or will be given custody of the child has made reasonable efforts to prevent the removal of the child from the child's home, to eliminate the continued removal of the child from the child's home, or to make it possible for the child to return safely home. The agency shall have the burden of proving that it has made those reasonable efforts.
R.C. 2151.419(A)(1).
In the instant case, after holding an adjudicatory hearing pursuant to R.C. 2151.33, the trial court awarded temporary custody on February 23, 1999, stating that "[r]easonable efforts have been made to prevent removal through voluntary case work services since the child's birth." Charles and Christina argue that there was no evidence to support this "conclusory sentence." However, the record before this court does not include a transcript of the adjudication hearing. It is well-established that "the party asserting error bears the burden of demonstrating the error by reference to matters in the record." Hinkle, Cox, Eaton,Coffield Hensley v. Cadle Co. (1996), 111 Ohio App.3d 713, 717. Because this court does not have any record of the adjudicatory hearing, we must presume that there was evidence to support the trial court's determination.
Charles and Christina also point out that the trial court's order of permanent custody did not include a finding that WCCSB made reasonable efforts to eliminate continued removal of Michael from the home or to return him to the home. We first note that R.C. 2151.419 does not require a reasonable efforts determination on a permanent custody motion filed pursuant to R.C. 2151.414. Assuming, without deciding, that a reasonable efforts determination should be made before ruling on the permanent custody motion, we find this argument to be meritless nonetheless.
In the trial court's journal entry with findings of fact and conclusions of law, the court recounted the services offered and utilized in this case. During the pendency of the case, the trial court approved three case plans, all of which called for WCCSB to provide services to Charles and Christina to facilitate reunification if possible.
The evidence before the trial court at the permanent custody hearing established that the agency provided for an assessment of Charles and Christina, assessment for Michael to determine if he was developmentally delayed, and parenting classes for Charles and Christina. The agency offered weekly visitations between Michael and his parents. The agency provided cleaning services to correct the hygiene problems in the first apartment. Notwithstanding Charles and Christina's diligent participation in these programs, including the parenting classes, they still did not have adequate parental skills to properly care for Michael.
Under the facts and circumstances of this case, this court declines to find that the trial court erred in failing to make a reasonable efforts determination in a permanent custody order. See, also, In re PieperChildren (1993), 85 Ohio App.3d 318, 326 (finding that "[t]he record demonstrates that the risk of harm to these children * * * was not susceptible to any curative efforts by [the agency]. * * * These matters are manifest in the findings of the court and there is no doubt as to their sufficiency").
The Lairds have offered no suggestions as to what reasonable efforts WCCSB could have made which would have achieved reunification under these circumstances.
The third assignment of error is not well-taken, and it is overruled.
 IV.
Having overruled the assignments of error, we affirm the judgment of the trial court.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Wayne, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellants.
Exceptions.
______________________________________ WILLIAM R. BAIRD
SLABY, J. CONCURS.