JOURNAL ENTRY AND OPINION
This is an appeal from the decision of the Cuyahoga County Common Pleas Court, Juvenile Division, which dismissed a complaint filed by Cuyahoga County Department of Child and Family Services (CCDCFS) seeking an adjudication that Noah Prendergast is a dependent child. For the reasons that follow, we affirm.
Susan Prendergast is the mother of Noah, whose date of birth is November 1, 1996. She is also the mother of Leah Prendergast, a younger sibling of Noah, who died April 7, 2000 reportedly from a fall from a twin bed. Horace Greene is the alleged father of Leah while the record reveals that, during the course of these proceedings, a parent-child relationship was established between Horace and Noah. It appears from the record that on the evening of April 6, 2000, Susan left Leah and Noah in the care of her mother, Nancy Prendergast, while she attended a funeral service. Susan returned home at approximately eleven o'clock at which time her mother informed her that Leah had fallen from the bed. Susan checked on Leah and observed nothing unusual. At midnight, Leah awakened crying and vomiting. Susan gave her Motrin thinking that the child was exhibiting flu-like symptoms. Around one o'clock in the morning, Leah again vomited whereupon Susan called the pediatrician. The pediatrician advised Susan to continue to monitor Leah and that if she vomited again then it may be necessary to take her to an emergency room. Susan also called Horace at work to apprise him that she may have to take Leah to the hospital. He returned home at approximately two-thirty a.m., noticed that Leah was awake and fussy but otherwise in no acute distress. Leah was placed in between Susan and Horace in their bed and eventually returned to her crib at approximately four o'clock a.m.
Susan left in the morning for an appointment with a case worker, leaving the children in Horace's care. When she returned at eleven o'clock that same morning, Horace informed her that Leah was still asleep. When Susan checked on Leah, she was unresponsive. Efforts to resuscitate her were unsuccessful.
Late that same afternoon, two social workers from CCDCFS presented themselves at Susan's home inquiring as to the circumstances surrounding Leah's death. Horace, upset at the timing of this investigation, did not remain in the home during this time. Susan, according to the social workers' testimony, cried throughout the questioning but answered their questions calmly and cooperatively. The social workers' verified that Susan did call her pediatrician and that she did as the pediatrician advised.
An autopsy was performed the next day, April 8, 2000, and the coroner determined that Leah sustained a blunt impact to the back of her head fracturing the skull and causing a hematoma. The death was ruled a homicide.
On April 10, 2000, the Cuyahoga County Court of Common Pleas, Juvenile Division, issued an ex parte telephonic order finding Leah's older brother, Noah, to be a dependent child and authorized CCDCFS to remove Noah from his home and placed into emergency custody. In its subsequently filed complaint for dependency and temporary custody, CCDCFS alleged that Noah is a dependent child pursuant to R.C. 2151.04(C). In particular, CCDCFS claims that the parents' explanation of Leah's injury is inconsistent with the cause of death. Furthermore, CCDCFS contends that Susan, Horace and the maternal grandmother all had access to Leah and any one or all of them could have been responsible for Leah's death. Because of this and Susan's past history of substance abuse, CCDCFS claims that Noah is at risk and should be adjudicated dependent.
At the emergency custody hearing held on April 13, 2000, the trial court found probable cause for issuance of the telephonic order and continued the hearing on the complaint for a later date. It appears from the record that Noah was placed in the home of a relative during the pendency of these proceedings.
The adjudicatory hearing commenced on June 22, 2000 and Dr. Marta Steinberg of the Coroner's Office testified as to the cause of death. While stating that the cause of death was due to blunt impact, Dr. Steinberg also testified that there may have been a pointed or protruding object that hit Leah's skull, although there were no outward signs of injury. She further testified that, in her opinion, that Leah could not have sustained such a severe injury after falling from an approximate twenty-four to twenty-five-inch-high twin bed. Continuing, she stated:
 This is a severe injury. I'm not saying it's impossible, because in the living organism things are possible. But I say with as much medical certainty, based on my experiences and what I have seen, not from a twenty (20) to twenty-five (25) inch fall on surface, this kind of injury.
In her opinion, Leah's injuries are more consistent with a five-foot fall.[1]
The hearing reconvened on September 28, 2000 at which time testimony was taken from the two social workers who conducted the investigation on the day Leah died. Therese Sheffield, a friend of Susan's who accompanied Susan to the funeral service, also testified on Susan's behalf as did Horace Green. The social workers' testimony merely relayed Susan's version of events and the social workers' impression of Susan's behavior and level of cooperation. The hearing was continued yet again until October 26, 2000 and completed on that date.
On November 14, 2000, a magistrate's decision was issued finding that CCDCFS failed to prove by clear and convincing evidence that Noah was a dependent child and recommending that CCDCFS's complaint be dismissed. It was also recommended that Noah be returned to the legal care and custody of Susan. CCDCFS objected to this decision and requested findings of fact and conclusions of law, the latter of which was later withdrawn. The trial court overruled CCDCFS's objections and adopted the magistrate's decision as its order on November 22, 2000.
CCDCFS is now before this court and assigns one error for our review. Succinctly, CCDCFS contends that it was error for the trial court to dismiss its complaint for dependency when it presented clear and convincing evidence that Noah is a dependent child.
Before we address the merits of this appeal, however, CCDCFS has filed a motion asking this court to issue an order directing appellees to file a conforming brief under App.R. 16(B). In particular, CCDCFS claims that appellees have included in their appellate brief matters that are not part of the record. It is true that this court cannot consider new or additional matters that were not before the trial court. See State v. Ishmail (1978), 54 Ohio St.2d 401, at the syllabus. This court is limited to reviewing the record that was before the trial court and that we will do. This does not mean, however, that appellees' brief does not conform to the technical requirements of App.R. 16. Because we find that appellees' brief does meet these requirements, CCDCFS's motion is not well taken and is denied.
In its argument on appeal, CCDCFS contends that Noah is a dependent child pursuant to R.C. 2151.04(C), which defines a dependent child as one [w]hose condition or environment is such as to warrant the state, in the interests of the child, in assuming the child's guardianship. It is the state that must prove by clear and convincing evidence that a child is dependent. See Juv.R. 29(E)(4); R.C. 2151.35(A). Clear and convincing evidence is that which `produce[s] in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.' In re Pieper Children (1993), 85 Ohio App.3d 318, 326 quoting In re Adoption of Holcomb (1985), 18 Ohio St.3d 361, 368.
CCDCFS bases its allegations on the fact that Leah sustained fatal injuries while Susan, Horace and Susan's mother, Nancy, had access to the child. Any one of these individuals, in CCDCFS's opinion, could have been responsible for seeing that Leah avoided injury or taking appropriate steps for medical intervention once the injury occurred. CCDCFS attempted to portray Nancy as physically incapable of providing care for the children because of an earlier stroke and therefore Susan's decision to leave the children in Nancy's care was unreasonable according to CCDCFS. The testimony at trial, however, does not support CCDCFS's position. While the record does support that Nancy suffered a stroke, her physical limitations were restricted to less than full use of her right arm and minimal speech difficulties. Without more, it cannot be said that Susan's decision to leave her children in the care of Nancy while she was out for the evening was unreasonable.
CCDCFS next criticizes Susan's conduct following her conversation with Leah's pediatrician. Reiterating, it appears that the pediatrician advised Susan to continue monitoring Leah after the initial vomiting episode and that Leah should be taken to the hospital if she vomited again. It is CCDCFS's position that Leah was exhibiting stomach distress that should have alerted Susan that Leah was trying to vomit, which would have been a sign that she needed to take Leah to the emergency room as directed by the pediatrician.Had she done so, CCDCFS contends that tragedy could have been averted. Yet trying to vomit and vomiting are not equivalent. CCDCFS's attempt to portray Susan as not following the pediatrician's advice is disingenuous especially in light of the social worker's testimony to the contrary.
CCDCFS also attempted to show that Susan's past history with substance abuse and completion of a twelve-step program warranted a finding of dependency when both social workers testified that Susan admitted having one drink at the dinner following the funeral service. This is hardly clear and convincing evidence that somehow Susan suffered a relapse and returned to abusing alcohol so as to endanger the environment in which her children resided.
Lastly, CCDCFS alleges in its complaint that a criminal investigation is pending concerning the death of Leah. It relies on In re Scott (Aug. 22, 1997), Marion App. No. 9-97-28, unreported, 1997 Ohio App. Lexis 4076 for the proposition that a pending criminal investigation into the death of a sibling warrants a finding of dependency. While this may be true if the parents are suspects in that investigation, it can hardly be true if they are not so. CCDCFS presented absolutely no evidence to support its allegation that a criminal investigation was pending. The social workers both testified that they had communicated with police officers but that is insufficient to support that an investigation was pending or that either or both of the parents were under suspicion. Nor does the fact that the coroner ruled Leah's death a homicide imply as much. Consequently, CCDCFS's reliance on Scott does little to aid its case when the facts are distinguishable from the instant case.
We cannot agree with CCDCFS that it presented clear and convincing evidence that Noah is a dependent child. Nothing in the evidence summarized above convinces us that trial court erred in its assessment of the evidence before it. Merely because a child's death cannot be explained to the satisfaction of the coroner does not place that child's caregivers at risk for being the cause of that death. This is not to say that the result could have been otherwise had the evidence supported that Susan's judgment that night was impaired because of substance abuse or that an active ongoing investigation was underway in where Susan, Horace or Nancy were suspects. This is not the case, however, and without more, the evidence is anything but clear and convincing that Noah is at risk and therefore a dependent child under R.C. 2151.04(C).
CCDCFS claims to only ask this court to be given the opportunity to continue its investigation as to whether Noah is at risk for being a dependent child. It argues that this can only be accomplished by having the complaint reinstated and Noah returned to its emergency custody. Should the allegations in the complaint prove unfounded, it maintains that Noah would be returned to his parents' care. Yet, in the seven months that CCDCFS had emergency custody, its investigation failed to produce clear and convincing evidence that Noah was dependent. Moreover, nothing prevents CCDCFS from commencing a subsequent investigation if and when it can be demonstrated that any of Noah's caregivers are suspects under a criminal investigation or if Noah is otherwise suspected of being a dependent child. Until that time, however, there is no justification for Noah to be removed from his home.
CCDCFS's sole assignment of error is not well taken and is overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Juvenile Court Division, Common Pleas Court, to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
MICHAEL J. CORRIGAN, J. and PATRICIA A. BLACKMON, J., CONCUR.
[1] It appears from the record that Dr. Steinberg's testimony was, incompletely recorded. As a result, the record in this case is supplemented by an App.R. 9(C) statement of evidence.