JOURNAL ENTRY AND OPINION
The appellants, Charles Nester and Lisa Vinci, parents of the minor child, Brittany Vinci, appeal the decision of the Cuyahoga County Court of Common Pleas, Juvenile Court Division, that found it in the child's best interest that permanent custody be granted to the Cuyahoga County Department of Children and Family Services. For the reasons set forth below, we affirm the decision of the trial court.
Brittany Vinci was born on June 3, 2000. Shortly after her birth, she was placed in the emergency custody of the Cuyahoga County Department of Children and Family Services (hereinafter referred to as "CCDCFS") because of the mother's erratic and hostile behavior in the hospital and mother's refusal to provide identifying information to the hospital staff. Four other children were previously removed from the mother's custody due to her erratic behavior and concerns about her mental health.
Upon further investigation by CCDCFS, it was determined that the appellants' living situation was not proper for an infant in that it lacked sufficient space and provisions for a newborn.
On June 5, 2000, CCDCFS filed a complaint alleging dependency and seeking permanent custody of the child. On July 7, 2000, both parents were served with copies of the complaint and summons at their apartment address, where both copies of the complaint and summons were accepted and signed for by Ms. Vinci.
At a pretrial hearing on July 10, 2000, Ms. Vinci appeared and testified that she had shown the complaint to Mr. Nester. She further testified that he was requesting a continuance and denied the underlying allegations of dependency regarding Brittany; however, Mr. Nester failed to appear at the first hearing or any subsequent hearings in this matter.
CCDCFS filed a case plan on July 12, 2000 which required both parents to submit to psychological evaluations, obtain and maintain suitable housing, and maintain emotional stability. Mr. Nester was additionally required to establish paternity of the child and complete a drug assessment.
On October 2, 2000, an adjudicatory and dispositional hearing was held, and CCDCFS called the following witnesses to testify: Denise Dembroski, an intake social worker for CCDCFS, Arlene Zemba, an on-going social worker on the case, and Dr. Thomas Anuszkiewicz, a psychologist who conducts psychological evaluations for custody matters.
The testimony of Ms. Zemba established that despite the efforts of the social workers assigned to appellants' case, the appellants failed to comply with the established case plan. Mr. Nester never attended the drug and alcohol assessment, and there was much confusion as to whether or not he had ever established paternity of Brittany.
Ms. Zemba further testified regarding the appellants' failure to obtain suitable housing. She stated that the appellants were living in a one-room efficiency unit which shared kitchen and bathroom facilities with six to eight other units, all located above a bar. The court continued the remainder of the hearing for two months to allow the appellants to obtain more appropriate housing. When the court reconvened on December 5, 2000, the appellants had been evicted from the one-room efficiency unit and had failed to obtain new suitable housing. Mr. Nester had informed Ms. Zemba by telephone that he and Ms. Vinci were living in a hotel.
It should again be noted that Mr. Nester had not appeared at any hearings in this matter. CCDCFS offered evidence that Mr. Nester had an outstanding capias for his arrest for failure to appear in court on a charge of drug possession.
With regard to Ms. Vinci's psychological evaluation, the evidence presented at trial, through the testimony of Dr. Thomas Anuszkiewicz, established that her initial evaluation was incomplete because she left the testing site without completing the test, even after being told not to leave until the test had been completed. Ms. Vinci subsequently returned weeks later with a completed test, which could not be accepted. Because Ms. Vinci had not completed the test on-site as required, she was later referred for a new evaluation, but failed to follow up on the referral. Although Ms. Vinci claimed to have never received the letter discussing the new referral, Ms. Zemba testified that she informed Ms. Vinci of the referral in person prior to the hearing on October 2, 2000.
At the conclusion of the evidence, Brittany Vinci's guardian ad litem,
Amy Woodrum, recommended that the child's best interests would be served by placing her in the permanent care and custody of CCDCFS.
Based upon all the evidence addressed at trial, the trial court awarded permanent custody of the child to CCDCFS. The decision was journalized on December 20, 2000. The appellants now appeal individually and assert the following assignments of error[1]:
 I. APPELLANT WAS NEVER PROPERLY GIVEN NOTICE OF THESE PERMANENT CUSTODY PROCEEDINGS THEREBY VOIDING THE TRIAL COURT'S JUDGMENT AGAINST HIM AS A MATTER OF LAW.
 II. THE TRIAL COURT'S FAILURE TO HOLD THE PERMANENT CUSTODY HEARING WITHIN NINETY (90) DAYS AFTER THE FILING OF THE COMPLAINT FOR PERMANENT CUSTODY VIOLATES THE APPELLANT'S STATUTORY RIGHTS PURSUANT TO SECTION 2151.35(B)(1), OHIO REVISED CODE, AND IS A VIOLATION OF HIS DUE PROCESS RIGHTS.
 III. THE TRIAL COURT ERRED WHEN IT GRANTED THE MOTION FOR PERMANENT CUSTODY OF BRITTANY VINCI BECAUSE THE DECISION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 IV. THE TRIAL COURT ERRED IN NOT ORDERING THE CHILD BE PLACED IN A PLANNED PERMANENT LIVING ARRANGEMENT, WHEN SUCH AN ORDER WAS SUPPORTED BY THE EVIDENCE ADDUCED AT TRIAL AND WHICH EVIDENCE DID SATISFY THE STATUTORY REQUIREMENTS AND CONDITIONS WHICH ALLOW A DISPOSITIONAL ORDER OF PLANNED PERMANENT LIVING ARRANGEMENT.
In his first assignment of error, Mr. Nester asserts that the trial court was without proper jurisdiction to grant permanent custody to CCDCFS since the court failed to properly serve him with a copy of the motion for permanent custody. Appellant's assertions are without merit.
The notice requirements for filing a complaint for permanent custody have been codified in R.C. 2151.414(A)(1), which reads in pertinent part:
 Upon the filing of a motion pursuant to section 2151.413 of the Revised Code for permanent custody of a child, the court shall schedule a hearing and give notice of the filing of the motion and of the hearing, in accordance with section 2151.29 of the Revised Code, to all parties to the action and to the child's guardian ad litem. The notice also shall contain a full explanation that the granting of permanent custody permanently divests the parents of their parental rights, a full explanation of their rights to be represented by counsel and to have counsel appointed pursuant to Chapter 120 of the Revised Code if they are indigent, and the name and telephone number of the court employee designated by the court pursuant to section 2151.314 of the Revised Code to arrange for the prompt appointment of counsel for indigent persons.
In addition, R.C. 2151.29 provides in pertinent part:
 Service of summons, notices, and subpoenas * * * shall be made by delivering a copy to the person summoned, notified, or subpoenaed, or by leaving a copy at his usual place of residence.
In the instant case, Mr. Nester characterizes himself as "transient" for the time period in question. Nester's appellate counsel writes that it is "undeniable that the appellant had no usual place of residence during this relevant time period and did not have by any stretch of the imagination what might be reasonably described as stable housing or residence." We find the appellant's contentions to be non-persuasive. The record clearly displays that on July 7, 2000, both appellants were served with copies of the complaint and summons which were accepted and signed for by Ms. Vinci. At the first hearing, Ms. Vinci informed the court that she and Mr. Nester lived together, that she had given Mr. Nester the complaint and summons, that Mr. Nester was aware of the hearing, that Mr. Nester wanted a continuance and wanted it stated to the court that the allegations contained in the complaint were false.
The facts and evidence presented at the first hearing on July 10, 2000 demonstrate that Mr. Nester was properly served, as a process server left a copy of the summons and complaint at his usual place of residence, the apartment he shared with Ms. Vinci. To hold otherwise would allow anyone's self-imposed "transient" status to thwart otherwise proper service. Appellant's first assignment of error is without merit.
Mr. Nester's second assignment of error asserts that the trial court failed to hold a permanent custody hearing within the prescribed ninety days following the filing of the complaint. This court must again find Mr. Nester's contentions to be without merit.
R.C. 2151.35(B)(1) provides in part:
 * * * The court, upon the request of the party or guardian ad litem of the child, may continue a dispositional hearing for a reasonable time not to exceed the time limits set forth in this division to enable a party to obtain or consult counsel.
 The dispositional hearing shall not be held more than ninety days after the date on which the complaint in the case was filed.
 If the dispositional hearing is not held within the period of time required by this division, the court on its own motion or the motion of any party or the guardian ad litem of the child, shall dismiss the complaint without prejudice.
The ninety-day time limit may be waived. In In re Kutzil (1991),71 Ohio App.3d 843, the appellant, instead of initially moving for a dismissal of the complaint, moved for a continuance of the hearing date. After the first continuance was granted, and when faced with the court's refusal to allow for a second continuance, the appellant moved for dismissal of the complaint based on the ninety-day requirement under R.C. 2151.35(B)(1). The reviewing court found that the appellant waived by implication the right to have the complaint dismissed upon grounds that the dispositional hearing was not held within ninety days after the filing of the complaint since she had requested a continuance. Id. at 310.
In the case at bar, this reviewing court must also conclude that the appellant, Mr. Nester, properly waived by implication any argument toward the complaint's dismissal for violation of the ninety-day time restrictions.
At the first hearing, Ms. Vinci testified that Mr. Nester was aware of the hearing, that he had received the summons and complaint from Ms. Vinci herself, and that he had requested through her a continuance of the hearing and denied the allegations of neglect. Based on the statements made by Ms. Vinci and the trial court's findings that Mr. Nester's counsel requested a continuance to allow him additional time to meet with Mr. Nester in order to mount a defense, there exists sufficient evidence to prove that Mr. Nester has waived by implication any time restriction set forth under R.C. 2151.35(B)(1). Therefore, Mr. Nester's second assignment of error is without merit.
In Lisa Vinci's first assignment of error, she contends that the court's decision to award permanent custody of her child to CCDCFS was against the manifest weight of the evidence. Appellant's assignment of error is without merit.
This court abides by the principle that a child's natural parents possess a constitutionally protected liberty interest in the care and custody of their children. Santosky v. Kramer (1982), 455 U.S. 745. Nonetheless, in reviewing the disposition of the trial court, a reviewing court is to accord the trial court's decision the "utmost respect." In ReCampbell (October 12, 2000), Cuyahoga App. Nos. 77552, 77603, unreported, 2000 Ohio App. LEXIS 4787, at 14; citing Reynolds v. Goll
(1996), 75 Ohio St.3d 121, 124. Therefore, unless the trial court abused its discretion, a reviewing court is not warranted in disturbing its judgment. In re Pieper Children (1993), 85 Ohio App.3d 318, 330.
When an agency seeks permanent custody of a child who is neither abandoned nor orphaned, it must prove, pursuant to R.C. 2151.414(B)(1), by clear and convincing evidence, that (1) the grant of permanent custody is in the best interest of the children, and (2) the children cannot be placed with either parent within a reasonable time or should not be placed with the parents. Under 2151.414(D), certain factors are listed that should be considered by the trial judge in making the determination of what is in the best interest of the children. Additionally, under 2151.414(E), the code provides the trial court with the grounds to determine if a child cannot or should not be returned to his or her parent.
R.C. 2151.414(D) provides in part:
 In determining the best interest of a child at a hearing * * * the court shall consider all relevant factors, including but not limited to the following:
* * *
 (2) The interaction and interrelationship of the child with his parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child;
 (3) The wishes of the child, as expressly directed to the child or through the guardian ad litem, with due regard for the maturity of the child;
(4) The custodial history of the child;
 (5) The child's need for a legally secure placement and whether the type of placement can be achieved without grant of permanent custody to the agency.
R.C. 2151.414(E) provides in part:
 (1) Following the placement of the child outside his home and notwithstanding reasonable care and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly for a period of six months or more to substantially remedy the conditions causing the child to be placed outside his home * * *.
 (2) The severe and chronic mental illness, severe and chronic emotional illness, severe mental retardation, severe physical disability, or chemical dependency of the parent makes the parent unable to provide an adequate permanent home for the child at the present time and in the foreseeable future.
* * *
 (4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child;
* * *
A review of the evidence presented before the trial court indicates that the court possessed competent and credible evidence to grant permanent custody to CCDCFS, and therefore, properly supported the termination of parental rights of both appellants.
During the dispositional hearing, the state called Denise Dembroski, an intake social worker for CCDCFS, Arlene Zemba, the on-going social worker assigned to the case, and Dr. Thomas Anuszkiewicz, a psychologist who conducts psychological evaluations for custody matters.
At the hearing, Ms. Dembroski testified about her observations of the appellants' place of residence, a one-room efficiency unit located over a bar. The efficiency unit was a ten-by-twelve room that shared bathroom and kitchen facilities with six to eight other units. Ms. Dembroski stated that the size of the room was only big enough for a bed and a night stand, and she questioned whether a crib would fit in the room. She further testified that the kitchen was filthy and that the refrigerator, in addition to being filthy and having an odor to it, also had mold growing on one of the shelves. Part of Ms. Dembroski's concerns centered around the open access to all of the rooms on the second floor. She stated that "due to the many different efficiency units, there were people coming up the stairs and down the stairs, in and out leaving * * *."
CCDCFS then called Ms. Arlene Zemba, the ongoing case worker assigned to the case, who added to Ms. Dembroski's description of the appellants' apartment. Ms. Zemba also testified about her concern over the mental condition of Ms. Vinci. Ms. Zemba described an incident where Ms. Vinci became so enraged that she actually left her apartment for fifteen minutes to have a cigarette and coffee. In addition, Ms. Zemba testified that both appellants failed to complete their established case plans. Ms. Vinci was to obtain stable housing, undergo a psychological evaluation and obtain any mental health services recommended as a result of her evaluation. Mr. Nester was also to undergo a drug and alcohol assessment. As shown by the testimony of Ms. Zemba and Dr. Anuszkiewicz, Ms. Vinci failed to properly complete her first psychological evaluation and then failed to show up for the second evaluation. Mr. Nester also failed to show up for his drug and alcohol assessment.
The court continued the dispositional hearing for sixty days, until December 5, 2000, to allow each of the appellants time to work on their case plans and for further testimony by both parties. At the December 5th hearing, Ms. Zemba was again called as a witness and testified that the appellants had been evicted from their one-room apartment and that Mr. Nester had informed her that he and Ms. Vinci were temporarily living at a motel/hotel.
Dr. Anuszkiewicz also testified at the December 5th hearing and stated that when Ms. Vinci came in for her psychological evaluation, she was told that she must finish all parts of the test before leaving and if she had to leave before finishing the test, she must leave the test at the testing site and then reschedule a time when she could come in to complete the evaluation. Even with this warning, Ms. Vinci left after completing only part of the test and took the unfinished part of the test home with her. She then returned weeks later with the completed test. Dr. Anuszkiewicz testified that he was unable to accept the test from Ms. Vinci because the test results were rendered suspect since she had taken the test home; therefore, he was unable to complete the evaluation.
Ms. Vinci then took the stand on her own behalf claiming to have obtained suitable housing for her child. She testified that she had saved $300 for the deposit on an apartment and was waiting for it to be painted. She further testified that she was never told by Dr. Anuszkiewicz that the test could not be completed at home and submitted at a later date. During cross-examination, it was found that Ms. Vinci's original statement that she possessed $300 for the deposit on an apartment was not true and that she had only $40 in her bank account.
Additionally, in regard to suitable housing, evidence was presented that it was questionable whether there was in fact an apartment which would be ready in a couple of months.
At the conclusion of the evidence, the guardian ad litem recommended that a grant of permanent custody of the child to CCDCFS would be in the best interest of the child. She further testified that she could not foresee any time in the near future where either parent would be able to provide a safe and stable home environment for the baby.
Based upon a review of the evidence presented at the permanent custody hearings, this court holds that the state has presented sufficient evidence to prove by clear and convincing evidence that the appellants' parental rights should be terminated. The evidence presented satisfies several of the factors listed in 2151.414(D) and 2151.414(E) which would warrant the child's removal from the home and a termination of the parents' custody rights. We find no abuse of discretion in the trial court's judgment granting permanent custody to CCDCFS; therefore, this court is not warranted in disturbing its judgment. Ms. Vinci's first assignment of error is overruled.
In appellant's fourth assignment of error, Ms. Vinci maintains that the trial court failed to order the child be placed under a planned permanent living arrangement ("PPLA") as was supported by the evidence adduced at trial. Appellant's final assignment of error is without merit.
R.C. 2151.353(A)(5) provides that, as an alternative disposition to placing a child in the permanent custody of a children service agency, the trial court "may" place the child in a PPLA only if the trial court finds by clear and convincing evidence that it is in the best interest of the child and one of the following exists:
 (a) the child, because of physical, mental, or psychological problems or needs, is unable to function in a family setting and must remain in residential or institutional care.
 (b) the parents of the child have significant physical, mental, or psychological problems and are unable to care for the child because of those problems, adoption is not in the best interest of the child, as determined in accordance with division (D) of section 2151.414 of the Revised Code, and the child retains significant and positive relationship with a parent or relative.
In order for this section of the statute to apply, "evidence must exist to show, first, that adoption is not in the best interest of the child, and no evidence was presented to establish this conclusion. Second, the evidence must show a significant and positive relationship with the parent." In Re H.K., et al. (January 31, 2002), Cuyahoga App. No. 79282, unreported, 2002 Ohio App. LEXIS 381, at 12. We find no evidence that demonstrated a significant and positive relationship with the parents. The evidence presented at the disposition hearing demonstrated that the appellants have failed to remedy their housing problem, failed to satisfy their case plan, and failed, on the part of the alleged father, to even establish paternity. Therefore, since there is no evidence in support of a PPLA being established, Ms. Vinci's assignment of error is without merit. We find no evidence exists to show that adoption is not in the best interest of the child.
Judgment affirmed.
It is ordered that appellee recover of appellants its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court, Juvenile Division, to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
TIMOTHY E. McMONAGLE, A.J., AND COLLEEN CONWAY COONEY, J., CONCUR.
[1] Assignments of Error I and II appear in Appellant Nester's Brief, and Assignments of Error III and IV appear in Appellant Vinci's Brief.