JOURNAL ENTRY AND OPINION.
{¶ 1} Appellant mother appeals from the trial court's journal entry of May 23, 2002, that granted the Cuyahoga County Department of Children and Family Services' ("CCDCFS") amended dispositional request and ordered her son, D.B., placed in a planned permanent living arrangement ("PPLA"). She challenges the court's PPLA order. Having reviewed the arguments of the parties and the pertinent law, for the reasons that follow, we uphold the trial court and deny the appeal.
 I. {¶ 2} D.B. is a seven-year-old child currently living with the foster family with whom he was placed when eight months old. Except for a period from 1998 to November 2000, he has lived with his foster parents. He received a liver transplant at the age of ten months and is medically fragile. In November of 2000, he was diagnosed at University Hospitals as failing to thrive and was in the fifth percentile for his weight and age.
 {¶ 3} On November 17, 2000, CCDCFS filed a complaint alleging neglect and requested a disposition of permanent custody regarding the child. On November 21, 2000, he was committed to temporary emergency custody. On October 18, 2001, an adjudicatory hearing was conducted. At the conclusion of the hearing, he was adjudged to be a neglected child and the matter was continued for a dispositional hearing.
 {¶ 4} The dispositional hearing was conducted on May 3, 2002. At this time, CCDCFS orally moved to amend its dispositional request from permanent custody to a PPLA. The guardian ad litem recommended a PPLA, the mother accepted the PPLA through counsel, and the matter was concluded. On May 23, 2002, the trial court issued and journalized its decision that granted CCDCFS' amended dispositional request and ordered D.B. placed in a PPLA. Mother is now appealing from this order.
 II. {¶ 5} Her sole assignment of error states the following: "Although the mother agreed to a permanent planned living arrangement for her medically fragile child, she now feels that her agreement was ill advised and that CCDCFS did not follow through with the terms of the agreement."
 {¶ 6} A planned permanent living arrangement (PPLA) is an alternative form of custody in which the child is placed in a foster home or institution, with the intention that the child will remain in that home or institution until he is no longer in the county child services system. A PPLA does not sever the parental bonds as permanent custody does, but it also does not provide the child with a legally permanent placement. The statute permits the use of a PPLA only in cases which fit one of three criteria: first, the child must have serious needs which preclude him from a placement outside residential or institutional care; second, the parents must have serious problems which prevent the parents from caring for their children, yet have a strong bond with them, and adoption is not in the best interest of the children; or third, the child must be 16 years old or over and unwilling or unable to take a permanent placement. A planned permanent living arrangement is authorized in R.C.2151.353. In Re: P.R., et al., Cuyahoga App. No. 79609, 2002-Ohio-2029.
 {¶ 7} In reviewing a trial court's determination of a disposition, an appellate court is to accord the trial court's discretion "the utmost respect." Reynolds v. Goll (1996), 75 Ohio St.3d 121, 124. A reviewing court must take into account that "the knowledge gained through observing the witnesses and the parties in a custody proceeding cannot be conveyed to a reviewing court by a printed record." Id. Pursuant thereto, the trial court enjoys the presumption that its findings were correct. Id.
 {¶ 8} "A court exercising Juvenile Court jurisdiction is invested with very broad discretion, and, unless that power is abused, a reviewing court is not warranted in disturbing its judgment." In re PieperChildren (1993), 85 Ohio App.3d 318, 330.
 {¶ 9} It is with the above standards in mind that we now review the case sub judice. The record shows that the mother previously agreed to the PPLA; however, she now feels that CCDCFS did not follow through with the terms of the agreement. She indicates in her brief that it was her intention that the child be reunited with his extended family. However, the evidence demonstrates that neither the appellee CCDCFS nor the court ever promised that the child would be reunited with such extended family.
 {¶ 10} During the May 3, 2002 hearing, the prosecutor stated the following: "There is always a danger with his liver transplant and organ rejection, so I want to make it clear that we are not guaranteeing achange in placement, but we will continue to work with the relative and consider her and allow them to develop a relationship. But there is noguarantee of a change in placement."[1] Emphasis added.
 {¶ 11} Furthermore, after explaining the PPLA to the mother and asking her if she agreed with the PPLA, the judge asked the mother the following: "THE COURT: All right. Now, are you saying you're satisfied and you're doing this of your own free will and mind? Your dad didn't make you do it, your aunt didn't make you do it, and your lawyer didn't make you do it? I didn't make you do it, certainly. No one. You understand this, and you're making your own decision that this is fine; is that right? MS. BENSON: Yes, I am."[2]
 {¶ 12} Later, the judge stated that he accepted the PPLA because the guardian ad litem recommended it and all parties agreed to it. "I'll accept the recommendation since you all agree to it. And the recommendation from the guardian ad litem follows that."[3] Emphasis added.
 {¶ 13} The testimony above demonstrates that the agency did not make any guarantees or promises that the child would be reunited with the extended family. Furthermore, the statements made by the judge demonstrate that all parties knew and understood the terms of the PPLA. The evidence shows that the mother made an informed and voluntary agreement with the advice of counsel to accept the PPLA agreement, thereby waiving her ability to later claim that she now feels her agreement was ill-advised.
 {¶ 14} Mother further claims that the trial court violated R.C.2151.353(A)(5). Even though it is not mentioned in her assignment of error, this court would like to demonstrate that it is not well taken. Under App.R. 12(A)(2), this court can, in its discretion, disregard assignments of error when an appellant's brief fails to separately argue each assignment of error, as is required under App.R. 16(A)(7). An appellate court may disregard an assignment of error presented for review if the party raising it fails to identify in the record the error on which the assignment of error is based or fails to argue the assignmentseparately in the brief, as required by Ohio App.R. 16(A) and 12(A)(2). Emphasis added.
 {¶ 15} In addition to her sole assignment of error, mother alleges a violation of R.C. 2151.353(A)(5), when the court failed to find that she neglected D.B. and failed to find an inability of the child to function in a family-like setting.
 {¶ 16} R.C. 2151.353(A)(5) states the following:
"[§ 2151.35.3] § 2151.353 Disposition of abused, neglected or dependent child.
"(A) If a child is adjudicated an abused, neglected, or dependent child, the court may make any of the following orders of disposition:
"* * *
"(5) Place the child in a planned permanent living arrangement with a public children services agency or private child placing agency, if a public children services agency or private child placing agency requests the court to place the child in a planned permanent living arrangement and if the court finds, by clear and convincing evidence, that a plannedpermanent living arrangement is in the best interest of the child and thatone of the following exists:
"(a) The child, because of physical, mental, or psychological problemsor needs, is unable to function in a family-like setting and must remainin residential or institutional care.
"(b) The parents of the child have significant physical, mental, or psychological problems and are unable to care for the child because of those problems, adoption is not in the best interest of the child, as determined in accordance with division (D) of section 2151.414 [2151.41.4] of the Revised Code, and the child retains a significant and positive relationship with a parent or relative." Emphasis added.
 {¶ 17} The claim that the court failed to find the child unable to function or failed to find the child neglected is inaccurate. There was a hearing conducted on October 18, 2001, after which time the trial court issued a journal entry. The journal entry stated that the trial court listened to all of the evidence and, after due consideration, found by clear and convincing evidence that D.B. was neglected as defined in2151.03(A)(3).[4] Emphasis added. Furthermore, substantial evidence demonstrated that the child was not receiving the necessary medical care and was therefore at physical risk. This physical risk involved a severe life threatening liver problem hindering the child's ability to function in a typical family setting. The medical care and requirements of the child in this case are clearly atypical.
 {¶ 18} Furthermore, CCDCFS presented significant evidence that mother failed to obtain and/or administer the required medication, thereby putting the child at severe medical risk. In addition, she missed scheduled doctors' appointments. Although it is not exactly clear from the record which party was at fault for the missed medication, it is ultimately the mother's responsibility to ensure that the child receives the necessary medical care.
 {¶ 19} Based on the following: (1) the mother made a knowing and voluntary decision with the assistance of her counsel; (2) the serious life threatening medical condition of D.B.; (3) the recommendation of the guardian ad litem; (4) the substantial evidence presented; and (4) the best interest of the child, this court is upholding the trial court's granting of the PPLA.
 {¶ 20} The appellant's assignment of error is without merit and overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal. It is ordered that a special mandate issue out of this court directing the Court of Common Pleas, Juvenile Division, to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
KENNETH A. ROCCO, A.J. and ANNE L. KILBANE, J. concur.
[1] See May 3, 2002, Tr. p. 6.
[2] Tr. p. 13-14.
[3] Tr. p. 16.
[4] See trial court's journal entry regarding the October 18, 2001, hearing that was journalized on October 23, 2001. The journal entry provides supporting rationale for the trial court's decision. The entry stated that the mother failed to ensure that the child received his necessary medication, had not been to the pharmacy since August of 2000, failed to take the child to four necessary medical appointments, and was unemployed. It further stated the father is not providing support and his whereabouts are unknown, the child is underweight and failing to thrive, and the child was hospitalized as a result of not being properly medicated.