JOURNAL ENTRY and OPINION
{¶ 1} The state sought permanent custody of eight-year-old C.R. (we will refer to her as "the child") on grounds that her mother could not adequately provide for the child's medical needs. At four years of age, the child suffered burns over thirty percent of her body and continues to require special medical attention. In addition, the child is severely developmentally delayed due to lead poisoning. The juvenile division of the court of common pleas found that the state proved that the mother had failed to consistently attend to the child's medical needs and demonstrated a lack of commitment to the child by failing to exercise visitation. Nevertheless, the court ordered that the child enter a planned permanent living arrangement. The state's sole assignment of error on appeal contests this ruling.
 {¶ 2} When a child is adjudicated abused, neglected or dependent, one of the dispositions that the court is entitled to make is to commit the child to a planned permanent living arrangement. See R.C. 2151.353. As relevant here, the planned permanent living arrangement may be ordered if the court finds by clear and convincing evidence that the planned permanent living arrangement is in the best interests of the child and that "[t]he child, because of physical, mental, or psychological problems or needs, is unable to function in a family-like setting and must remain in residential or institutional care" or that "[t]he parents of the child have significant physical, mental, or psychological problems and are unable to care for the child because of those problems, adoption is not in the best interest of the child, as determined in accordance with division (D) of section 2151.414 of the Revised Code, and the child retains a significant and positive relationship with a parent or relative." See R.C. 2151.353(A)(5)(a) and (b). Because the court exercises its discretion to order a planned permanent living arrangement, we review that decision for an abuse of discretion. See Inre Pieper Children (1993), 85 Ohio App.3d 318, 330.
 {¶ 3} This case presents the second time that the mother has been involved with the department of children and family services. In 1999, her four children, including the child at issue here, were adjudicated neglected and placed under the protective supervision of the state after it was discovered that the children were not attending school and that they were not current on their immunizations.
 {¶ 4} In 1999, the state asked for temporary custody of the child after her clothes caught fire and she suffered third and fourth degree burns over thirty percent of her body. The complaint for temporary custody alleged that the mother had failed to participate in the child's treatment as requested by the child's medical providers. The hospital was prepared to discharge the child, but the mother's failure to participate in treatment meant that she was incapable of providing the home care that the child would need upon discharge from the hospital.
 {¶ 5} The court granted temporary custody of the child to the state, and the state placed the child in a foster home where the child would receive care from foster parents who had been trained to deal with the child's medical problems. As pertinent here, the state initiated a case plan that required the mother to complete parenting classes and to attend to the child's medical and therapy sessions to learn how to address the child's medical conditions.
 {¶ 6} Less than one year later, the state asked the court to grant it permanent custody of the child. In an affidavit appended to the motion for permanent custody, the state alleged that it had made reasonable and diligent efforts to remedy the problems that initially caused the child to be removed from the home, but that the mother had failed to remedy the problems by (1) failing to complete parenting education, (2) failing to consistently attend to the child's medical and therapy sessions in order to learn how to address the child's medical condition, and (3) failing to demonstrate a commitment to the child due to her lack of visitation. The affidavit also stated that the child was currently in specialized foster care that was meeting her medical needs.
 {¶ 7} The evidence produced at the hearing on the state's motion for permanent custody showed that the child suffers from learning disabilities as the result of severe lead poisoning. Although nearly seven years old at the time of the hearing, testing showed that the child exhibits behavior typical of a four-year-old and has a full-scale I.Q. score of 69. The burns the child suffered have required several surgeries to reconstruct her skin, and the child will likely need many more surgeries before the reconstruction is complete. The child suffers from post-traumatic stress related to the burn injuries. Finally, she has attention-deficit disorder and is hyperactive.
 {¶ 8} The child suffered burns on her body when her dress caught fire at age four. At the time of the accident, the child had been in the care of her maternal grandmother. Mother did not attend the child at the hospital for more than six weeks. Two reasons were offered for this: first, the family had experienced an outbreak of head lice and were barred from entering the hospital until they could prove that the lice were gone; second, the mother admitted that she stayed away from the hospital in part because she was dealing with the anguish caused by the injury to her daughter. Even after the child had been released from the hospital and committed to a foster home, mother visited with the child only sporadically. Mother claimed that she had transportation troubles or scheduling misunderstandings.
 {¶ 9} The evidence showed that the mother had a good relationship with the child, although the foster mother said that the child would show a great deal of anxiety before and after the visits. Nevertheless, the evidence showed no unusual behavior by the mother during these visits. There was no question as to the mother's love for the child.
 {¶ 10} The child's father lives in Tennessee and has only seen the child once in the last six years. He claimed the mother prevented him from seeing the child. The mother said that the one time the father did see the child occurred when he "kidnapped" the child and another sibling for a two week period. The mother testified that she went down to Tennessee and brought the children back to Ohio. The father testified at trial and stated his desire to take custody the child, but a report prepared by the Tennessee Department of Children and Family Services recommended that the father not be approved for custody of the child. The report cited to a lack of financial and marital instability within the father's home, and suggested that the father might have alcohol issues.
 {¶ 11} The social worker currently assigned to the case testified that the mother failed to complete the parenting portion of her case plan, but he did concede he received a fax "from the parenting group which stated that she did complete the class, so I guess she may have completed the parenting classes." He also testified that the mother's file showed that she had completed drug assessments. He remained concerned about the mother's failure to learn how to deal with the child's physical problems, but said that the mother had "taken a step" towards completing the case plan.
 {¶ 12} There were continued concerns about the mother's ability to provide a stable home. Just six months before trial, the state had removed three of her children and placed them into protective custody. Eviction was imminent, the mother was unemployed and the social worker was unable to contact the mother. When he went to the mother's residence, he found little food in the house and "what was there was spoiled." He also found cockroaches crawling on the food. By the time of trial, the mother had gained steady employment, although she had failed to document that fact by submitting pay stubs to the social worker. And the removal of the remaining children meant that she no longer received certain subsidies that had given her financial assistance. The stability of her financial situation thus remained in doubt.
 {¶ 13} Housing remained a question mark. At the time of trial the mother resided in the house of a friend. In total, four adults lived there. She said that if the court granted her custody of the child she would certainly move to a new residence. She claimed that she was saving money to use for housing.
 {¶ 14} Finally, the evidence showed that the mother gave up custody of one of her boys to that boy's grandmother because the boy had attention-deficit disorder and responded much better to the grandmother. The mother stated that the boy had emotional problems and those problems were" getting to be too much" for her.
 {¶ 15} The only part of the case plan that still required completion was the requirement that the mother learn how to treat the child's burns. The mother showed, however, that no referrals to that end had been made since 1999. Moreover, the testimony at trial tended to show that the child's medical needs only required that she be taken to the hospital once a week for treatment — there did not appear to be any need for the mother to render any extraordinary care.
 {¶ 16} The court's journal entry made the following findings:
 {¶ 17} "1. Mother has failed to complete parenting as required in then [sic.] case plan.
 {¶ 18} "2. Mother has failed to consistently attend child's medical and therapy sessions to learn how to address the child's medical condition, as required in her case plan.
 {¶ 19} "3. Mother has demonstrated her lack of commitment to the child by failing to regularly attend visitation, despite the ability to do so.
 {¶ 20} "4. The father has a history of domestic violence involving the mother. Father resides out of state and has not provided care of support for the child.
 {¶ 21} "The Court further finds that reasonable efforts to prevent the removal of the child from the home to wit:
 {¶ 22} "1. Substance abuse assessment and treatment.
 {¶ 23} "2. Counseling for mother and child.
 {¶ 24} "3. Parenting.
 {¶ 25} "4. Psychological evaluation.
 {¶ 26} "IT IS THEREFORE ORDERED THAT the child be placed in the Planned Permanent Living Arrangement of CCDCFS."
 {¶ 27} These findings repeat, in nearly verbatim fashion, each of the allegations of the state's motion for permanent custody. Despite this, the court did not order permanent custody but instead ordered that the child be committed to a planned permanent living arrangement.
 {¶ 28} We are aware of no authority for the proposition that the court is limited to the commitment scheme prayed for by the state in the event it finds all of the allegations of the motion for permanent custody proven by clear and convincing evidence. R.C. 2151.353(A) lists several different possible dispositions of an abused, neglected or dependent child. The court is not limited to making a disposition only as requested by the state.
 {¶ 29} The overriding theme of the juvenile law in this state is that the best interests of the child are paramount. In re Davis (Oct. 12, 2000), Cuyahoga App. No. 77124. Those best interests could very well dictate that a parent be included in the child's life, even though the parent might not be able to resume the duties of a parent within a reasonable period of time. We have stated that "we have not discouraged the courts from ordering a planned permanent living arrangement as a middle ground in cases where the court may not wish to sever parental rights, but believes that immediate reunification is unwarranted." In reNickol (Oct. 18, 2001), Cuyahoga App. Nos. 78701 and 78742, citing In reCampbell (Oct. 12, 2000), Cuyahoga App. Nos. 77552 and 77603.
 {¶ 30} The court's decision to order a planned permanent living arrangement cannot stand, however, unless the statutory prerequisites have been established. As we earlier stated, the prerequisites relevant to this case are that a planned permanent living arrangement is in the best interest of the child and either that the child is unable to function in a family-like setting and must remain in residential care or that her parents have significant physical, mental or psychological problems and are unable to care for the child, yet the child still retains a positive relationship with a parent or relative.
 {¶ 31} The court's journal entry does not address any of these factors. The findings it did make were consonant with those required for ordering that permanent custody be granted to the state. Those findings are not the same as those required for imposing a planned permanent living arrangement, and we cannot substitute them as such. Our recitation of the facts presented at the hearing suggest to us that some of the factors were present, but we believe the court, not us, should make those findings explicit in its order. As it is, the court utterly failed to address any of the required findings listed under R.C. 2151.353(A)(5).
 {¶ 32} Accordingly, we have no choice but to sustain the state's sole assignment of error and remand this matter back to the court with orders that it make specific findings as required by the statute. Our disposition necessarily moots the necessity to consider the state's arguments relating to the court's failure to order permanent custody. Thus we decline to rule on the issue of permanent custody.
 {¶ 33} The judgment is reversed and the cause is remanded for proceedings consistent with this opinion.
Judgment reversed and cause remanded.
ANNE L. KILBANE and DIANE KARPINSKI, JJ., concur.
It is, therefore, ordered that said appellant recover of said appellees its costs herein taxed.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.