DECISION AND JOURNAL ENTRY
{¶ 1} The Summit County Children Services Board ("CSB") appeals the Summit County Court of Common Pleas, Juvenile Division's grant of legal custody of E.B., Jr. to his mother, Marquita Thompson ("Marquita"). We affirm.
 I {¶ 2} E.B., Jr., born in January 1998, was diagnosed with shaken baby syndrome when he was around ten months old. Ultimately, the state charged a boyfriend of Marquita's with the assault; he pled guilty and was sentenced to eight years in prison. As a result of being shaken, E.B., Jr. requires extensive daily medical care, including physical therapy. Marquita has other three other children; two daughters ("L.B. and M.B.") by a man believed to be E.B. Jr's father ("E.B., Sr.") and a son ("L.M.") by the boyfriend charged with assaulting E.B., Jr.
 {¶ 3} On November 1, 2001, CSB filed a complaint indicating that Marquita's four children were neglected based on information that Marquita's house was in deplorable condition. The police removed the children from Marquita's custody. The neglect charge was dismissed pursuant to an agreement between the parties. On January 30, 2002, the Juvenile Court placed the children in the temporary custody of CSB. CSB placed M.B., L.B. and E.B., Jr. with their paternal great-grandmother, Minnie B. ("Minnie") and L.M. was placed with one of his paternal relatives. On December 20, 2002, the Juvenile Court returned legal custody of M.B., L.B., and L.M. to Marquita; the disposition of these cases is not at issue in this appeal. E.B., Jr. remained with Minnie. Marquita petitioned to have custody returned to her. Marquita's mother ("Mrs. Odom") and her grandmother (Mrs. Easley") also expressed interest in gaining custody of E.B., Jr. in lieu of Minnie. CSB filed for a grant of legal custody to Minnie, or in the alternative, a grant of permanent custody to CSB.
 {¶ 4} The Juvenile Court began to take evidence and hear testimony pursuant to Marquita's motion on February 12, 2003. The matter remained undecided and the trial court held a disposition hearing starting October 27, 2003 and continuing through October 31, 2003. CSB presented six witnesses including the CSB caseworker, educational workers, medical personnel, and Minnie. Marquita presented eleven witnesses. The court heard from the guardian ad litem ("GAL") through her attorney.[1] The transcript from February 12, 2003 hearing was also before the court at the October hearing.
 {¶ 5} The judgment entry and order disposed of the following: (1) a motion of Mrs. Easley for legal custody; (2) Marquita's objection to a case plan amendment; (3) Marquita's motion for a change of placement; (4) Marquita's amended motion for change of placement seeking return of E.B., Jr. to her custody; (5) Marquita's motion for a change of caseworker; (6) Marquita's motion to dismiss; (7) CSB's motion for a grant of legal custody to Minnie; and (8) Marquita's objection to a second case plan amendment.
 {¶ 6} The Juvenile Court granted Marquita's motion for custody and returned legal custody to her under the protective supervision of CSB. The court denied Marquita's motion to dismiss and declined to address her remaining motions because they were moot. The court also denied the pending motions of the other parties.
 {¶ 7} CSB appealed the grant of legal custody to Marquita, raising one assignment of error.
 II Assignment of Error
"The Juvenile Court abused its discretion when it returned [E.B., JR.] to his mother."
 {¶ 8} CSB argues that, given the evidence, the juvenile court abused its discretion in returning E.B., Jr. to his mother, that legal custody should have been granted to Minnie, or alternatively to Mrs. Easley, and that there is no credible evidence that Marquita is able to attend to E.B., Jr.'s extensive needs.
 {¶ 9} In a dispositional hearing, the juvenile court has the discretion to award legal custody to a parent or any person who files a motion requesting legal custody. R.C. 2151.353(A)(3); Inre Ray Dawn Evens, Quartyis Secession (Feb. 2, 2000), 9th Dist. No 19489, at 7. The juvenile court is invested with a very broad discretion, and, unless that power is abused, a reviewing court will not disturb the judgment. In re Anteau (1941),67 Ohio App. 117, 119; In re Pieper Children (1993),85 Ohio App.3d 318, 330. To constitute an abuse of discretion, the juvenile court's action must have been arbitrary, unreasonable, or unconscionable. In re Ray Dawn Evens, Quartyis Secession,
supra, at 8.
 {¶ 10} CBS argues that the CSB caseworker testified that she was unable to maintain contact with Marquita because Marquita was unresponsive to phone calls and letters; therefore the caseworker had no way to monitor progress with the case plan. The caseworker further stated that when she did communicate with Marquita, Marquita was angry and argumentative. The caseworker also alleged that Marquita was evicted from her home for nonpayment of rent, Marquita did not observe E.B., Jr's physical therapy sessions, and Marquita did not visit him consistently at Minnie's house.
 {¶ 11} CSB claims the evidence demonstrates that E.B., Jr. was enrolled in a special educational unit, but stopped attending while he was in Marquita's care whereas Minnie always ensured that E.B., Jr. attended. CSB also presented medical witnesses to testify to the extent of E.B., Jr.'s medical needs and the dangers of withholding proper treatment and services. CSB argues that Minnie is well-versed in E.B., Jr.'s care requirements and has a bonded, loving relationship with him.
 {¶ 12} CSB's misgivings regarding Marquita's ability to care for E.B., Jr. include her frequent change of address, her testimony that she didn't know how E.B., Jr. was injured and possibly it was from a fall, her past criminal convictions for assault and theft, and her visits with L.M. to see his father in prison. CSB also raises an alleged fight between Marquita and other females wherein Marquita was initially accused of stabbing someone.
 {¶ 13} CSB claims that the GAL shares their concerns regarding Marquita, and originally supported Minnie as custodian of E.B., Jr., but changed her mind to request that custody be granted to Mrs. Easley.
 {¶ 14} This court has reviewed the transcripts from the February hearing and the five days in October. The transcripts reveal that there were valid explanations for Marquita's change of addresses. Marquita testified that she was not evicted for nonpayment of rent, but left because the landlord did not maintain the property. This was corroborated by another witness.
 {¶ 15} Marquita, although stating that she wasn't sure what happened to E.B., Jr., claimed that she accepted E.B., Jr.'s shaken baby diagnosis based upon the plea agreement. Further, the trial court order prohibits Marquita from allowing the imprisoned boyfriend to have contact with E.B., Jr.; Marquita expressed that she can comply with that condition. Marquita and others testified that she did know how to take care of E.B., Jr.'s needs, and in fact, did so for the first three years of his life until he was removed from her custody. Marquita's reluctance to visit E.B., Jr. at Minnie's was credibly explained as being a result of animosity between the women. Further, Marquita admitted the fight raised by CSB, but she testified that she was a victim, she was the one stabbed, and no charges were ever brought against her. The GAL's report indicated that Marquita was very good with E.B., Jr. and his siblings were attached to him. The GAL reported that Marquita would have no problem caring for E.B., Jr. and that the home was very clean and roomy. The GAL's concerns ran to Marquita's frequent change of address and her contact with E.B., Jr.'s assaulter.
 {¶ 16} The evidence further demonstrates that Minnie may be an improper custodian. A paternity testing indicated that E.B., Sr. is not the father and, therefore, Minnie is not a relative to E.B., Jr. Further, E.B., Sr., while living at Minnie's, and while E.B., Jr. was present in the home, was arrested on charges stemming from possession of 112 grams of crack cocaine found in Minnie's house. The crack cocaine had a street value of over $11,000. At the February hearing, Minnie attempted to downplay problems she had had with E.B., Sr. breaking into her house, stealing from her, and using drugs, calling him "a wonderful man." Testimony showed that, at a prior residence, Minnie, while living in Akron Metropolitan Housing Authority ("AMHA") housing, was told by AMHA officials that a known drug dealer was frequenting her home, and that she would be asked to move if the visits continued. Minnie stated that she was planning on moving anyway, and did so, but additionally stated that no one ever proved the man possessed drugs there. There was also testimony at the October proceeding that CSB failed to perform background checks on other relatives living with Minnie or staying there frequently; those relatives included people with several criminal convictions regarding drug use. Marquita testified that while her two girls and E.B., Jr. were living with Minnie, one of the girls found a syringe. The GAL's report indicated that as early as December 2001, the GAL asked that E.B., Jr. be removed from Minnie's home due to the risks involved with that household.
 {¶ 17} Marquita also stated that E.B., Jr. had physically regressed while living at Minnie's house. Although CSB claims that E.B., Jr. requires "a caretaker who will be there 24 hours a day, seven days a week in order to survive," Mrs. Odom testified that twice she found E.B., Jr. unattended and left alone in Minnie's house.
 {¶ 18} Marquita testified that gaps in services for E.B., Jr. were the result of decisions based on E.B., Jr.'s health, concerns about his exposure to numerous people and his discomfort at being transported. Moreover, the trial court noted "that health issues have also resulted in gaps in services while the child has been in the temporary custody of [CSB] and in placement with Minnie[.]"
 {¶ 19} Based upon the testimony, the trial court eliminated Minnie as a custodian. As CSB withdrew their motion for a grant of permanent custody to their agency, the trial court's remaining choice for custody was either Mrs. Easley or Marquita.[2]
 {¶ 20} The trial court, in considering Mrs. Easley, noted that she could care for E.B., Jr. and would maintain contact between E.B., Jr. and Minnie for visitation. However, Mrs. Easley also testified that the best placement would be with Marquita where E.B., Jr. would have access to his siblings, and Mrs. Easley had expressed interest in custodianship only as an alternative to continued placement with Minnie. Mrs. Easley also stated that if placement were with Marquita, the other family members would be available to assist her with E.B., Jr.'s care. The trial court also noted that Mrs. Easley is 66 years old, and her husband is 74.
 {¶ 21} We can find no abuse of discretion in the juvenile court's grant of legal custody to Marquita. She demonstrated an ability to care to E.B., Jr. prior to his removal, and she has extensive family support, if she requires it. Testimony indicated that her home was stable and well-kempt. In contrast, the drug use in Minnie's home, and her apparent blindness to it, was problematic for the juvenile court. Moreover, Minnie did not always ensure that E.B., Jr. was tended, as CSB claims is required. Mrs. Easley sought custody only if the court determined that Marquita would not prevail on her motion. Therefore, the grant of legal custody to Marquita over Minnie or Mrs. Easley was not arbitrary, unreasonable, or unconscionable and did not constitute an abuse of discretion.
 III {¶ 22} CSB's assignment of error is overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division is affirmed.
Judgment affirmed.
Whitmore, P.J., and Batchelder, J., concur.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
Exceptions.
Whitmore, P.J. Batchelder, J. Concur.
[1] The GAL was hospitalized at the time of the hearing and was, therefore, unable to attend.
[2] Marquita's mother, Mrs. Odom, although expressing interest, had never filed for legal custody and therefore was not considered as a custodian for E.B., Jr. In order to gain legal custody, it is required that a motion be filed prior to the dispositional hearing. R.C. 2151.353(A)(3).